714 So.2d 920 (1998)
HORSESHOE ENTERTAINMENT and Louisiana Riverboat Gaming Partnership, et al., Plaintiffs-Appellants,
v.
BOSSIER PARISH POLICE JURY, Defendant-Appellee.
No. 30502-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1998.
*921 Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, James Migalis, Penny N. Nowell, Shreveport, for Plaintiffs-Appellants.
Pugh, Pugh & Pugh by Robert G. Pugh, Shreveport, James M. Bullers, Bossier Parish District Attorney, Benton, for Defendant-Appellee.
Before HIGHTOWER, BROWN and PEATROSS, JJ.
BROWN, Judge.
Two riverboats engaged in gambling activities and berthed in Bossier City filed this action to restrain and enjoin the enforcement of a $.50 per person boarding fee imposed by the Bossier Parish Police Jury and for a declaratory judgment that the fee was invalid.
Prior to the enactment of the admission fee by the police jury, Bossier City, the only agency authorized by the legislature to impose a $2.50 admission fee, and the boats executed an agreement whereby the boats paid a fixed amount in lieu of a per person boarding fee and in lieu of "any future legislative modifications ... regarding distribution of riverboat gaming revenue." By resolution, the police jury, who was not authorized to receive any gaming revenue, had approved this agreement in return for a $300,000 annual payment from each boat. Thereafter, La. R.S. 4:552 (now R.S. 27:93) was amended to authorize the $.50 admission fee now in question. This additional $.50 was allocated to go to the parish road fund. The trial court found that the amendment that authorized the $.50 boarding fee was not a special or local law. The trial court further found that "it would be against public policy to allow the Police Jury ... to enter into a binding agreement restricting and preventing the Legislature from, in the future, granting them the authority to assess a fee." (Emphasis added). With these rulings, we agree. The trial court, however, found that the police jury, rather than Bossier City, was the "local governing authority" authorized to impose the $.50 admission fee. With this portion of the judgment, we disagree.

Discussion
La. Const. art. 12, § 6b provides that gambling shall be defined by and suppressed by the legislature. In 1991, the legislature enacted statutes authorizing the licensing of certain riverboat gambling operations. La. R.S 4:501 et seq. Citing the legislative duty to "suppress" rather than "authorize" gambling, opponents challenged the constitutionality of these statutes in Polk v. Edwards, 626 So.2d 1128 (La.1993). In Polk, the supreme court found that the delegates to the 1973 Constitutional Convention made three significant changes concerning gambling.
First, they removed the moral condemnation that gambling is a vice. Second, they adopted the word "suppressed," rather than "prohibited." Finally, they stated, explicitly, for the first time in a Louisiana Constitution, that the legislature shall define gambling, an obvious constitutional incorporation of the Gandolfo [v. La. State Racing Commission, 227 La. 45, 78 So.2d 504 (1954)] language regarding "how, when, where and in what respects gambling shall be prohibited or permitted."
Polk, supra at 1141.
The supreme court concluded that the legislature has the power to determine how, when, where, and in what respects gambling shall be prohibited or permitted. Thus, "considering the absence of a specific constitutional prohibition, we find that these four acts (including the act permitting riverboat *922 gambling) are well within the legislature's police power and are also within the legislature's plenary power...." Id. at 1141.
La. Const. art. VII, § 1 provides that "the power of taxation shall be vested in the legislature, shall never be surrendered, suspended, or contracted away and shall be exercised for public purposes only." In Polk, the supreme court restated the rule that the taxing power vested in the legislature can be delegated, rather than surrendered, to local government. Accordingly, any taxing power entrusted to local government can be revoked or modified at the direction of the legislature. Polk, supra, at 1143.
Under La. R.S. 4:552 (now designated as R.S. 27:93) the legislature authorized the "local governing authority" of the parish or municipality where a riverboat is berthed to charge an admission fee of up to $2.50 for each passenger boarding the gambling boat. In Bossier Parish, La. R.S. 4:552 directed that 80% of the boarding fee collected was to go to Bossier City, 5% to the Johnny Gray Jones Youth Shelter and 15% to the Bossier Parish School Board to be used solely for the Bossier Education Excellence Fund.
In 1995, the legislature amended La. R.S. 4:552 (now R.S. 27:93) to authorize a $.50 increase of the boarding fee in the Parishes of Caddo and Bossier with the monies being dedicated to the respective road funds of the two parishes. In Bossier Parish the money was to be used first to widen Airline Drive from 1-220 to the Linton Road cut-off. When Bossier City refused to imposed the $.50 increase, the Bossier Parish Police Jury did, and this action was filed by the Louisiana Riverboat Gaming Partnership d/b/a Isle of Capri Casino-Bossier City (Isle) and Horseshoe Entertainment (Horseshoe). Horseshoe settled with the police jury, leaving only the Isle as plaintiff.

Local or Special Law
The Isle argues that Act 743 of 1995, which amended La. R.S. 4:552, is a local or special law and therefore unconstitutional. The Isle further argues that the trial court erred in relying solely on the case of Polk v. Edwards, supra, in determining that the act and therefore the statute was not unconstitutional. We disagree.
La. R.S. 4:552(A)(2)(i) states:
In Bossier Parish, if the local governing authority levies an additional fifty cent admission fee as authorized by Paragraph (1) of this Subsection, the funds derived from this additional fee shall be used in their entirety for the parish road fund and shall be used to provide that Airline Drive from 1-220 to the Linton Road cut-off be made into a four-lane highway. After this project is completed the funds derived from this additional fee shall be used for general use in the parish road fund.
The supreme court in Polk, supra, noted the axiom that the constitutional prohibition of local or special laws is not intended to restrict the use of the legislative power to further the state's interests, but rather to prevent abuse of that legislative power on behalf of special interests and to prohibit the exemption of an individual or private corporation from the operation of the general law.
General or public laws affect the community as a whole, whether throughout the state or one of its subdivisions. Local or special laws affect private persons, private property, private or local interests. Polk, supra. The supreme court stated:
A statute is not a local or special law within the meaning of the constitutional provision if persons throughout the state are affected, or if it operates on a subject in which people at large are interested, even though its application and immediate effect is restricted to a particular locality.
Polk, supra, at 1134; see also Livingston Downs Racing Association, Inc. v. State of Louisiana, 96-2890 (La.12/02/97), 705 So.2d 149, 156; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885.
Gambling is a statewide concern, as is the condition of our roads and our schools, regardless of its specific locale. Further, we can not look upon a single amendment to a statute and determine whether that amendment is local or special. Such a piecemeal approach would undermine our legislative process. The meaning and intent of a statutory *923 provision is to be determined by a consideration of the statute in its entirety and all other laws on the same subject matter and a construction should be placed on the provision in question which is consistent with the express terms of the statute and the obvious intent of the legislature enacting it. Turner v. City of Shreveport, 437 So.2d 961 (La.App. 2d Cir.1983). La. R.S. 4:552 read in its entirety directs the distribution of the boarding fee in each parish where riverboats are licensed and a boarding fee is authorized. This is a statewide concern as there are several boats authorized throughout the state. Therefore, we find La. R.S. 4:552 and its amendments to be constitutional.

The Agreement
La. R.S. 4:552 (now R.S. 27:93) authorized an admission fee if the local governing authority chose to assess it. Further, La. R.S. 4:552(B) provided that "[O]ther than to levy the admission fee authorized by Subsection A of this Section, no local governing authority may license or regulate the operation of riverboats and the gaming operations conducted thereon." (Emphasis added).
Bossier City, the local governing authority where the boats are berthed, chose not to assess the $2.50 per person boarding fee. Rather, the riverboats and Bossier City negotiated a fixed fee arrangement. The Bossier Parish Police Jury and other parish governmental agencies participated in the discussions leading up to the agreement. The police jury passed four resolutions approving the agreement reached by Bossier City.[1] The resolutions state that the police jury would request the legislature to exempt Bossier Parish from "any future modifications to riverboat gaming legislation regarding the assessment or distribution of fees during the term (10 years) of this agreement" and that the police jury accepts $50,000 per year for the youth shelter and $300,000 per year for the police jury "in lieu of any future modifications which may be proposed... (and) in complete satisfaction of any and all gaming revenues to be received...."
In accordance with these resolutions, the Isle signed an agreement with Bossier City. This agreement provided that the city would collect from the Isle specific sums to be disbursed as follows: $350,000 to the police jury (of which $50,000 would go to the youth shelter); $300,000 to the Bossier Parish School Board; $200,000 to the Bossier Parish Sheriff's Department; $150,000 to the Greater Bossier Economic Development Foundation; and $2,500,000 or 3.2 % of their annual gross gaming receipts, whichever was greater, to Bossier City. Horseshoe executed a similar agreement with the city. In accordance with their agreements, the Isle and Horseshoe made payments after commencing their operations. The records filed in evidence show that 3.2% of the riverboats' gross receipts have always been greater than the $2.5 million minimum payable to Bossier City. Thus, while the school board and youth shelter received the same payment each year, Bossier City's revenues continually increased.
Pursuant to section 1.5 of the agreement, Bossier City, on behalf of the police jury and the other recipients, acknowledged that the Isle's payments were "in total fulfillment of [its] obligations under La. R.S. 4:552, particularly to the Johnny Gray Jones Youth Center... [and] the [Police Jury]...." As noted above, however, La. R.S. 4:552 allocated no funds from the authorized boarding fee to the police jury. The agreement and police jury resolutions executed in 1994 "contracted away" the right to enact a per person boarding fee and any future legislative grants or modifications of the taxing power or distribution of gaming revenues for a period of ten years.
Following the 1995 amendment to La. R.S. 4:552, which provided for an additional $.50 per person fee to be allocated to the parish road fund, the police jury passed Ordinance No. 3413, effective January 1, 1996, levying a fee in the amount of $.50 for each passenger *924 boarding a riverboat located within Bossier Parish.
Filed in evidence by the police jury are monthly activity summaries from the Louisiana State Police which show the total admissions and gaming revenues from all boats. For 1996, the Isle's monthly admissions ran from a high of 172,226 to a low of 115,310 while the Horseshoe's ran from a high of 466,133 to a low of 323,760. Clearly, revenues generated by a $2.50 or $3.00 boarding fee would have exceeded the fixed sums set out in the agreement to be paid to the school board, youth shelter and police jury, as well as the percentage of gross receipts payable to Bossier City. Further, Horseshoe's liability based on admissions would have been much greater than that of the Isle.
La. R.S. 4:552 as amended delegates the right to levy the admission tax in Bossier Parish solely for the benefit of the city, youth shelter, school board and police jury road fund. The Bossier Parish Sheriff's Department and Economic Development Foundation are not designated as beneficiaries of the tax.
A municipality or police jury is a subordinate political subdivision of the state and as such possesses only those powers delegated to it by the state and its constitution. Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury, 371 So.2d 1127 (La.1979); Bradford v. City of Shreveport, 305 So.2d 487 (La.1974). The state has the ultimate power to license and regulate gaming facilities. Polk, supra. Therefore, it correlates that any political subdivision of the state has only such powers as are expressly delegated to it by the state through statutory enactments. See Johnston v. Morehouse Parish Police Jury, 424 So.2d 1053 (La.App. 2d Cir.1982).
La. R.S. 4:522 allows for the collection of a specific boarding fee should the local governing authority choose to assess it. The local governing authority could not "contract away" the taxing power delegated to it by the legislature, La. Const. art. VII, § 1, and the clause in the 1994 agreement doing so is contrary to public policy and invalid. Thus, the local governing authority is free to impose a boarding fee in accordance with the statute at any time. Furthermore, the local governing authority may implement any changes or modifications in the taxing power delegated to it by the legislature, regardless of any agreement not to do so.
The clause in the agreement forfeiting the right to implement the $2.50 admission tax or the additional $.50 allowed by the 1995 amendment is without effect.[2]

Who May Impose and Collect the Admission Fee
However, that still leaves the question of who has the authority to impose and collect the initial $2.50 admission fee and thereafter the additional $.50 authorized by the amendment to La. R.S. 4:522.
Prior to 1995, La. R.S. 4:552(A)(1) read as follows:
(A)(1) The local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may levy an admission fee of up to two and one-half dollars for each passenger boarding or embarking upon a riverboat. For purposes of this Section, "licensed berth" shall mean the berth, dock, facility, or boarding area from which a riverboat excursion is authorized to originate by the commission or from which a riverboat is authorized by the commission to operate. (Emphasis added).
La. R.S. 4:552 was amended in 1995 by Act 743. The applicable portion of the statute was amended to read as follows (The bold language represents the amended language):
A(1) The local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may levy any admission fee of up to two and one-half dollars for each passenger boarding or embarking upon a riverboat; provided that in Bossier Parish and Caddo *925 Parish an admission fee of up to three dollars may be levied. For purposes of this Section, "licensed berth" shall mean the berth, dock, facility, or boarding area from which a riverboat excursion is authorized to originate by the commission or from which a riverboat is authorized by the commission to operate ...
(2)(i) In Bossier Parish, if the local governing authority levies an additional fifty cent admission fee as authorized by Paragraph (1) of this Subsection, the funds derived from this additional fee shall be used in their entirety for the parish road fund and shall be used to provide that Airline Drive from 1-220 to the Linton Road cut-off be made into a four-lane highway. After this project is completed the funds derived from this additional fee shall be used for general use in the parish road fund.
We agree with the trial court's interpretation that the original language of the statute indicates that either the local governing authority of the parish or municipality may levy an admission fee, but not both. (Emphasis theirs.) Each of the boats in question is berthed within Bossier City. Therefore, Bossier City, as the municipality where the boats are berthed, is the governing authority which may levy the boarding tax. However, this is where our agreement with the trial court ends, keeping in mind that statutory interpretation does not require the deference to the trial court accorded under the manifest error standard of review. See Mitchell v. AT & T, 27,290 (La.App.2d Cir. 08/28/95), 660 So.2d 204; Deumite v. State, 94-1210 (La.App. 1st Cir. 02/14/97), 692 So.2d 1127.
The trial court reasons that because Subsection (A)(2)(i) grants the additional monies, if collected, specifically to a project which affects Bossier Parish and not Bossier City, then the additional monies may only be collected by the parish. We find no merit to this reasoning.
Subsection (A)(2) allocates the funds derived from the admission fee in Bossier Parish to Bossier City, the school board and youth shelter. The addition of (A)(2)(i) in 1995 allocated monies for the improvement of Airline Drive where it runs through Bossier Parish and only partially through Bossier City and thereafter, to the parish road fund. We interpret this to mean that the fifty cents would be in addition to what the local governing authority, Bossier City, was already authorized to levy. The fact that the statute allocated the money to the police jury is no different than the allocations of a percentage to the youth shelter and school board in the statute as initially enacted. Any other reading would be a strained interpretation. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; Succession of Fragala v. Dubea, 28,663 (La.App.2d Cir. 09/27/96), 680 So.2d 1345.
Bossier City is the "local governing authority" for the implementation of a per person admission fee.
In this case, Bossier City has opted not to enact the boarding fee authorized by La. R.S. 4:552, as amended. Under its agreement, the city receipts are based on 3.2% of gross revenues with a guaranteed minimum of $2.5 million, while the other public entities are relegated to a fixed sum far below what a per person boarding fee would have generated.[3] We note also that Bossier City would have collected a larger amount based on a per person boarding fee than that collected on 3.2% of gross receipts.
The failure of Bossier City to now enact a boarding fee as authorized by the legislature would obviously be detrimental to the public entities designated to receive a part or a percentage of the revenues generated by the tax and might well be considered capricious and arbitrary. That question, however, is not before this court in this appeal.
Because we deem the ordinance invalid, we need not reach the Isle's argument against the use of summary proceedings and the imposition of penalties and attorney fees which were provided for by the ordinance. *926 Furthermore, we do not reach the Isle's equal protection argument.[4]

Decree
For the foregoing reasons, we REVERSE the judgment of the trial court and RENDER judgment in favor of plaintiff/appellant, Louisiana Riverboat Gaming Partnership d/b/a Isle of Capri Casino, and declare the ordinance of the Bossier Parish Police Jury imposing a $.50 per person admission fee to be invalid. All costs are to be assessed among the parties equally.
REVERSED and RENDERED.
HIGHTOWER, J., concurs in the result only.
NOTES
[1] Individual resolutions dealing first with the youth shelter and then the police jury were passed for each boat. The resolution concerning the Johnny Gray Jones Youth Shelter states that the Bossier Parish Police Jury is the agency responsible for the shelter.
[2] We further note that the agreement between Bossier City and the Isle provides that if another riverboat locates within a one hundred mile radius, that the agreement "will be subject to renegotiation." Such an event has occurred and the agreement by its own terms is subject to be set aside.
[3] Based on the admission figures in the state police reports.
[4] The Horseshoe agreed to pay 1% of its gross revenues with a credit against this amount for property taxes owed in lieu of the admission fee. The Isle, a similarly situated taxpayer, however, would have to pay the $.50 per person admission fee.