766 So.2d 738 (2000)
Billy Brooks HUDSON, et al., Plaintiffs-Appellants,
v.
CITY OF BOSSIER, et al., Defendants-Appellees.
No. 33,620-CA.
Court of Appeal of Louisiana, Second Circuit.
August 25, 2000.
*739 Jeffrey L. Little, Shreveport, Counsel for Appellants.
James M. Bullers, District Attorney, Pugh, Pugh and Pugh by Robert G. Pugh, Shreveport, Counsel for Appellee, Bossier Parish Police Jury.
James D. Hall, Bossier City, Counsel for Appellee, City of Bossier City.
Hammonds & Sills by Robert L. Hammonds, Karen D. Murphy, Baton Rouge, Counsel for Appellee, Bossier Parish School Board.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, James A. Mijalis, Penny N. Nowell, Shreveport, Counsel for Appellee, Louisiana Riverboat Gaming Partnership d/b/a Isle of Capri Casino.
Piper & Associates by Robert E. Piper, Jr., Shreveport, Counsel for Appellee, Horseshoe Entertainment.
Klotz, Simmons & Reeks by David Klotz, Shreveport, Counsel for Appellee, Greater Bossier Economic Development Foundation.
Cook, Yancey, King & Galloway by Ed Blewer, Glenn L. Langley, Shreveport, Counsel for Appellee, Bossier Parish Sheriff's Office.
Booth, Lockard, Politz, Lesage & D'Anna by Bennett Louis Politz, Shreveport, Counsel for Appellee, Johnny Gray Jones Youth Shelter.
Before NORRIS, BROWN and KOSTELKA, JJ.
BROWN, J.
Although authorized by the state legislature to levy a per person boarding tax/admission fee on casino boats within their jurisdiction, the City of Bossier City, Bossier Parish Police Jury and Bossier Parish School Board "contracted away" this right and any future grant of the power to tax in return for guaranteed annual payments from the boats.
A "Class Action Suit To Hold Contracts Invalid" was filed by four individuals seeking to represent a class of concerned citizens and taxpayers, naming as defendants various governmental, quasi-public and private defendants. Plaintiffs alleged that the agreements between the local governing authorities and the casino boats were invalid. There had been two previous actions involving the validity of the contracts, *740 one brought against the Police Jury by the casino boats and the other filed by the School Board. In those cases two judges of the 26th Judicial District reached different conclusions. The Police Jury's case was appealed and this court agreed with the trial court that the Police Jury's contracts were against public policy and therefore invalid. Horseshoe Entertainment v. Bossier Parish Police Jury, 30,502 (La.App.2d Cir.06/26/98), 714 So.2d 920, writ denied, 98-1941 (La.11/06/98), 728 So.2d 392.[1]
Some of the defendants filed exceptions, including one of res judicata.[2] The sole issue presented in this appeal is whether the trial court erred in ruling that the judgment in the prior School Board case precluded litigation of the issue of the viability of the contracts. Finding that there was neither full and fair consideration of the issues and claims now asserted by plaintiffs in the previous School Board case (as opposed to the Police Jury case), nor constitutionally adequate representation, we reverse and remand the matter to the trial court.

FACTS AND PROCEDURAL BACKGROUND

Authority to Tax Gambling Boats
La. Const. art. VII, § 1 provides that "the power of taxation shall be vested in the legislature, shall never be surrendered, suspended, or contracted away and shall be exercised for public purposes only." (Emphasis added). In Polk v. Edwards, 626 So.2d 1128 (La.1993), the supreme court restated the rule that the taxing power vested in the legislature can be delegated, rather than surrendered, to local governmental authorities. If so delegated, the constitutional prohibition that the power of taxation shall never be surrendered, suspended or contracted away would apply as well to these local governments. Horseshoe Entertainment, supra.
In 1994, the legislature authorized the "local governing authority" of the parish or municipality where a gambling boat is berthed to impose an admission fee of up to $2.50 for each boarding passenger. In Bossier Parish, La. R.S. 4:552 (now La. R.S. 27:93) directed that 80% of the boarding fee collected was to go to Bossier City, 5% to the Johnny Gray Jones Youth Shelter and 15% to the Bossier Parish School Board to be used solely for the Bossier Education Excellence Fund ("BEEF").
In 1995, the legislature amended La. R.S. 27:93 to authorize a $.50 increase in the boarding fee in the Parishes of Caddo and Bossier with the monies being dedicated to the respective road funds of the two parishes. In Bossier Parish the money was to be used first to widen Airline Drive from I-220 to the Linton Road cut-off.
La. R.S. 27:93(B) provided that "other than to levy the admission fee authorized by Subsection A of this Section, no local governing authority may license or regulate the operation of riverboats and the gaming operations conducted thereon." (Emphasis added).

The Contracts
Bossier City, the local governing authority where the gambling boats involved in the instant litigation are berthed, made a deal with the casinos not to assess a boarding tax/fee. Instead, in 1994, Riverboat Gaming Partnership d/b/a Isle of Capri Casino-Bossier City ("Isle of Capri"), Horseshoe Entertainment ("Horseshoe"), and Bossier City negotiated a fixed fee arrangement for a term of 10 years "in lieu of any future modifications ... (and) in complete satisfaction of any and all gaming revenues to be received ..." The Bossier Parish Police Jury as the operator of the *741 Youth Shelter, Bossier Parish School Board and other parish governmental agencies participated in the discussions leading up to the agreements and passed resolutions approving the contracts negotiated by Bossier City.
These agreements provided that Bossier City would collect from each boat specific sums to be disbursed as follows: $350,000 to the Bossier Parish Police Jury (of which $50,000 would go to the Youth Shelter); $300,000 to the Bossier Parish School Board; $200,000 to the Bossier Parish Sheriffs Department; $150,000 to the Greater Bossier Economic Development Foundation (an arm of the Chamber of Commerce); and $2,500,000 or 3.2 % of their annual gross gaming receipts, whichever was greater, to Bossier City.[3] In accordance with their contracts, the Isle of Capri and Horseshoe made payments after commencing their operations. The evidence in Horseshoe Entertainment, supra, showed that 3.2% of the riverboats' gross receipts has always been greater than the $2.5 million minimum payable to Bossier City. Thus, while the School Board, Youth Shelter and Police Jury received the same payment each year, Bossier City's revenues continually increased.[4]

Prior Lawsuits

Bossier Parish Police Jury
Following the 1995 amendment to La. R.S. 27:93, which provided for an additional $.50 per person fee to be allocated to the parish road fund, the Police Jury passed Ordinance No. 3413, effective January 1, 1996, levying a fee in the amount of $.50 for each passenger boarding a gambling boat located within Bossier Parish. The two riverboats filed an action seeking a declaratory judgment that the agreements signed by the Police Jury in 1994 were valid and that the Police Jury had forfeited its right to collect the $.50 boarding fee. The trial court ruled that the contracts were against public policy and unenforceable. With that ruling this court agreed. In Horseshoe Entertainment, supra at 924, we stated:
La. R.S. 4:522 (now R.S. 27:93) allows for the collection of a specific boarding fee should the local governing authority choose to assess it. The local governing authority could not `contract away' the taxing power delegated to it by the legislature, La. Const. art. VII, § 1, and the clause in the 1994 agreement doing so is contrary to public policy and invalid. Thus, the local governing authority is free to impose a boarding fee in accordance with the statute at any time. Furthermore, the local governing authority may implement any changes or modifications in the taxing power delegated to it by the legislature, regardless of any agreement not to do so.

Bossier Parish School Board
In August 1997, the School Board filed suit against the riverboats and the City of *742 Bossier City seeking a declaration that the agreements entered into by the City and School Board with the casinos were null and void. The School Board also sought an accounting from the City and redistribution of the revenues already collected. In an amendment to its petition, the School Board joined as defendants the other public, quasi-public and private entities benefitting from the agreements. Basically, the School Board contended that the contracts were null and void as against the public interest as they provided for less revenue from the casinos than the amount set forth in La. R.S. 27:93. Without explanation, in a motion for summary judgment, the School Board abandoned its position and stated that it "no longer challenges the legal validity of the contracts between the City of Bossier and the two Riverboat(s)."[5]
With that admission, defendants filed a motion for summary judgment. On June 4, 1998, a written judgment was signed by the trial court recognizing the validity of the contracts and granting defendants' motion for summary judgment. One month prior to the judgment being signed, at its May 7, 1998 meeting, the School Board voted unanimously not to appeal.[6] In fact, on April 30, 1998, Elton Pentecost, a school board member, filed a statement in the minutes of the School Board meeting, advising that he was voting not to pursue the litigation "in order to provide the citizens... their best opportunity to obtain their rightful share of the revenues (from the riverboats) ... (by) giving clearance to a proposed class action suit ... [T]his action (dropping the lawsuit by the Board) will reduce the hindrances which have continually plagued the School Board's effort and will give counsel carte blanche authority and access to all legal avenues in pleading the case." (Emphasis added). Two other school board members noted for the record that they agreed with Mr. Pentecost's statement. The later June 4, 1998 judgment was not appealed and it became final even though this court's ruling in Horseshoe Entertainment, supra, was rendered within the time limits for an appeal.

Facts of the Instant Case
Several defendants in the instant matter filed exceptions of no cause/no right of action, vagueness and ambiguity, lack of procedural capacity and res judicata. After a hearing, the trial court sustained the exception of res judicata.[7] The court found that although plaintiffs were not parties in the previous School Board action, their interests were adequately represented by the School Board. Plaintiffs' action was accordingly dismissed. It is from this judgment that plaintiffs have appealed.[8]

DISCUSSION
Louisiana's doctrine of res judicata, now embodied in La. R.S. 13:4231, was substantially changed by La. Acts 1990, No. 521, § 5, effective January 1, 1991. In its present posture, our law now bars a second action between the parties which arises out of the occurrence which was the subject matter of the prior action. La. R.S. 13:4231; Terrebonne Fuel & Lube, Inc. v. Placid Refining Company, 95-0654, 95-0671 (La.01/16/96), 666 So.2d 624. As stated *743 in the comments to La. R.S. 13:4231 as amended, "[t]he central inquiry is not whether the second action is based in the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action. This serves the purpose of judicial economy and fairness by requiring plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence." See Avenue Plaza, L.L.C. v. Falgoust, 96-0173 (La.07/02/96), 676 So.2d 1077.
La. R.S. 13:4231 embraces the broad usage of the phrase "res judicata" to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel). Under claim preclusion, a final judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Thus, res judicata used in the broad sense has two different aspects: 1) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit; and 2) foreclosure of relitigating matters that have been previously litigated and decided.
The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. Giving conclusive effect to a prior judgment against one who is neither a party nor in privity with the party therein contravenes due process. As a consequence, a judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings. Richards v. Jefferson County, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). Thus, without identity between the parties in the first and subsequent actions, an exception of res judicata will not be maintained. Tranchina v. State, 99-1332 (La.App. 4th Cir. 06/09/99), 740 So.2d 713.
Identity of parties does not mean that the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity. Sun Finance Co., Inc. v. Jackson, 525 So.2d 532 (La.1988); Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978). See also Duffy v. Si-Sifh, Corp., 98-1400 (La.App. 4th Cir.01/09/99), 726 So.2d 438, writ denied, 99-0372 (La.04/30/99), 741 So.2d 14; Arthur v. Zapata Haynie Corp., 95-956 (La.App. 3d Cir.01/22/97), 690 So.2d 86, writ denied, 97-1031 (La.05/30/97), 694 So.2d 252, cert. denied, 522 U.S. 860, 118 S.Ct. 162, 139 L.Ed.2d 106 (1997); Morris v. Haas, 95-75 (La.App. 5th Cir.05/30/95), 659 So.2d 804, writs denied, 95-2519, 95-2545 (La.12/15/95), 664 So.2d 441.
As noted in Terrebonne Fuel & Lube, Inc., supra, Louisiana's res judicata law was broadened by the 1990 amendment and is now in line with federal provisions. Under federal law, the preclusive effect of a judgment binds the parties to the action and nonparties who are deemed the "privies" of the parties in these limited circumstances: (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the party and the nonparty are so closely aligned. Gilbert v. Visone, 30,204 (La. App.2d Cir.02/25/98), 708 So.2d 496; Condrey v. Howard, 28,442 (La.App.2d Cir.08/21/96), 679 So.2d 563, writ denied, 96-2335 (La.11/22/96), 683 So.2d 281, citing Meza v. General Battery Corp., 908 F.2d 1262 (5th Cir.1990). The concepts of control and virtual representation are narrowly construed and are not satisfied merely by showing that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the *744 respective actions. Gilbert, supra (citations omitted).
While La. R.S. 13:4231 provides for a broad application of res judicata and has as its purpose to foster judicial efficiency and protect defendants from multiple lawsuits, La. R.S. 13:4232 provides exceptions in which a judgment does not bar another action by a plaintiff. Those exceptions are:

(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or
(3) When the judgment reserved the right of the plaintiff to bring another action.
As stated in the official comment, La. R.S. 13:4232 gives a court the authority to exercise its equitable discretion to balance the principle of res judicata with the interests of justice. Fine v. Regional Transit Authority, 95-2603 (La.App. 4th Cir.06/26/96), 676 So.2d 1134; Jenkins v. State, 615 So.2d 405 (La.App. 4th Cir. 1993), writ denied, 617 So.2d 932 (La. 1993).
In the instant case, finding that plaintiffs' interests were adequately represented by the School Board in the first suit such that it became the "virtual representative" of the plaintiffs, the trial court sustained the exception of res judicata and dismissed plaintiffs' action. We cannot agree with the trial court's conclusion that plaintiffs' interests were adequately represented by the previous litigant.
Notwithstanding a previously "considered" opinion from a different judge in the same judicial district that found the Police Jury's contracts against public policy and invalid, and notwithstanding this court's affirmation of that decision in Horseshoe Entertainment, supra, the School Board acquiesced to a contrary opinion by stipulating to the validity of the contracts and failing to appear at the motion for summary judgment or appeal therefrom. On this issue, there was no, or at best, cursory representation.
Although an equal protection claim was asserted by the Isle of Capri in the Police Jury case, constitutional claims were not addressed in the two previous lawsuits. The present litigation involves governmental bodies and public revenues, specifically the failure of the governing authorities to tap available revenues to the fullest extent at the expense of the citizens and taxpayers of Bossier Parish. Furthermore, the abrupt consent by the School Board to the validity of the contracts created a perception of a "friendly action." We find inadequate representation and also that exceptional circumstances exist such that the doctrine of res judicata should not bar plaintiffs' action.

Conclusion
Based upon our finding that the trial court erred in granting defendants' exception of res judicata, we hereby reverse the judgment of the trial court and remand this matter for further proceedings. Costs, here and below, are assessed to appellees, Louisiana Riverboat Gaming Partnership d/b/a Isle of Capri Casino-Bossier City and Horseshoe Entertainment.
REVERSED AND REMANDED.
NOTES
[1] This case was reversed by this court on other grounds.
[2] Neither the Police Jury nor the School Board joined in these exceptions. On appeal, the Police Jury stood "moot on the issues presented" except to refer this court to its decision in Horseshoe Entertainment.
[3] The Bossier Parish Sheriff's Department and Economic Development Foundation are not designated by the statute as beneficiaries of the boarding tax. The Police Jury's road fund was not initially a beneficiary but was added by the 1995 amendment. We note also that, under the agreements, the monies paid to the School Board and Police Jury are not directed to the BEEF and road fund respectively as would be required by the statute.
[4] Filed into evidence by the Police Jury in Horseshoe Entertainment, supra, were monthly activity summaries from the Louisiana State Police which showed the total admissions and gaming revenues from all boats. For 1996, the Isle of Capri's monthly admissions ran from a high of 172,226 to a low of 115,310 while the Horseshoe's ran from a high of 466,133 to a low of 323,760. Clearly, revenues generated by a $2.50 or $3.00 boarding fee would have exceeded the fixed sums set out in the agreement to be paid to the School Board, Youth Shelter and Police Jury, as well as the percentage of gross receipts payable to Bossier City. Further, Horseshoe's liability based on admissions would have been much greater than that of the Isle of Capri. In Horseshoe Entertainment, the Isle of Capri asserted a denial of equal protection claim; however, that issue was not reached in light of this court's disposition on other grounds.
[5] The record of the School Board case was filed in the instant action by defendants in support of their res judicata claim.
[6] The record does not show when (or even if) the trial court made a ruling prior to signing the judgment.
[7] Plaintiffs' request for class certification is pending this court's determination in this appeal and the trial court did not rule on any of the other exceptions.
[8] Plaintiffs did not suggest nor did the trial court consider that the Police Jury is as much a representative of the taxpayers of Bossier Parish as is the School Board. The Police Jury aggressively pursued and won a ruling that its resolutions approving Bossier City's contracts were invalid, while the School Board simply consented to a contrary judgment.