pPEATROSS, Judge.
This appeal arises out of a dispute over the abandonment of a part of Third Street and proposed zoning changes of certain property in Benton, Louisiana (“subject property”). Two ordinances were enacted by the Benton Board of Aldermen: (1) Ordinance No. 345 of 2000, which changed the zoning of the subject property; and (2) Ordinance No. 342 of 2000, which abandoned a portion of Third Street. The validity of these ordinances constitutes the majority of this appeal; the trial court found both ordinances to be void due to procedural defects in their enactments. For the reasons stated herein, we affirm.

FACTS and PROCEDURAL BACKGROUND

There are many procedural facets in the history of the present litigation, including proceedings before the Benton Metropolitan Planning Commission (“MPC”) and Board of Aldermen and a prior civil suit. Before outlining the procedural background, we will provide a brief synopsis of the factual setting of this case, the parties involved and the circumstances giving rise to the zoning dispute. The subject property is the site on which the Benton Travel Plaza is situated, which is a truck stop and convenience store. Plaintiffs/Appellees are landowners and citizens of Benton, including at least one member of the MPC, who oppose the changes and filed suit against the Town of Benton and its Mayor at the time, Carl Janzen, seeking, inter alia, to have the ordinances declared void. Appellants Ardis T. Allan, Thomas B. Montgomery, Jr. and Thelma Ruth H. Montgomery (“Owners”) are the owners of the subject property and the property adjacent to the portion of Third Street sought to be abandoned; and Appellant Benton ^Travel Plaza operates the truck stop and is the holder of a lease on the subject property. The Owners and Benton Travel Plaza intervened in the present suit, aligning themselves with the Town of Benton and the Mayor in support of the ordinances. In short, the abandonment of a portion of Third Street allows the subject property to be one contiguous plot, rather than being dissected by the roadway. The zoning change would allow for an expanded travel plaza, including service bays for trucks, a gas station, a convenience store, gaming and parking. Against that factual backdrop, we will next review the procedural history of this dispute before reaching this court on appeal.
On March 6, 2000, Benton Travel Plaza applied to the MPC to change the zoning classification of the subject property from B-2 (Neighborhood Business) to B-3 (Community Business District). On April 3, 2000, after a lengthy hearing with many residents of Benton present, the MPC *84 unanimously denied the proposed amendment to the zoning ordinance.[1] On May 8, 2000, the Mayor and Board of Aldermen considered the proposed amendment, codified as Ordinance 345 of 2000. After hearing from both proponents and opponents of Ordinance 345, the Board of Aldermen voted 3-2 in favor of the proposed amendment, i.e., in favor of changing the zoning of the subject property from B-2 to B-3, thereby enacting Ordinance No. 345.
1 ¡¡During this same time frame, the second ordinance at issue in this appeal was enacted. On March 13, 2000, the Mayor and Board of Aldermen introduced and set for public hearing Ordinance No. 342 of 2000, which proposed the abandonment of “the west 130 feet of Third Street lying north of Block 24 and south of block 17 in the Town of Benton.... ” On April 10, 2000, the Mayor and Board of Aldermen passed (by 3-2 vote) Ordinance No. 342. This ordinance originated with the Board of Aldermen; it was not first considered by the MPC.
Apparently, construction consistent with the zoning change and abandonment was commencing which prompted Plaintiffs’ filing, on November 6, 2000, of a Petition For Writ of Mandamus, or, Alternatively, Declaratory Relief naming the Mayor and the Town of Benton as defendants (“Defendants”). The petition sought court orders directed to the Mayor ordering him to uphold the B-2 zoning classification of the subject property and to submit the “vacating” of Third Street to the MPC. Plaintiffs argued that both ordinances were illegal: (1) Ordinance 345 was illegal because it was not adopted in accordance with Act 558 of 1956 (“Act 558”)(quoted infra) and (2) Ordinance 342 was illegal because it was not first considered by the MPC. Alternatively, Plaintiffs sought a declaratory judgment that both ordinances were not lawfully enacted and were, therefore, null, void and without effect. The matter was ultimately set for trial on January 2, 2001. On December 29, 2000, Defendants filed dilatory and peremptory exceptions of res judicata, prescription, improper use of summary proceeding, no cause/right of action and failure to join an indispensable |4party. On January 29, 2001, the Owners and Benton Travel Plaza filed a Petition for Intervention. The allegations in these pleadings (the exceptions filed by Plaintiffs and the Petition for Intervention) reveal an additional proceeding which had been filed, also in the 26th Judicial District Court, which dealt with the validity of Ordinance No. 345.
After the meeting of the Board of Aider-men wherein it declined to follow the MPC’s recommendation to deny the proposed zoning change from B-2 to B-3, and approved the change, the MPC, in its official capacity, filed a petition for writ of mandamus against the Mayor and Town of Benton seeking an order directing the Mayor to uphold the status of the B-2 zoning of the subject property. That suit was styled The Benton-Parish Metropolitan Planning Commission v. Carl F. Janzen, In His capacity as Mayor of the Town of Benton, Louisiana and the Town of Benton, Suit No. 103,995 (“Suit No. 103,995”). The MPC asserted that Ordinance No. 345 was not validly enacted because it was not passed with the required two-thirds vote in accordance with Act 558 of 1956. Article 4, Section 3 of Act 558 reads, in pertinent part, as follows:
*85 The Village Council and the Police Jury-may make from time to time, other additions to or modifications of the official map by placing thereon the lines of planned new streets or street extensions, widenings, narrowings, or vacating ... and provided further that such proposed addition to or modification of the official map shall be submitted to the planning commission for its approval, and, in the event of such commission’s disapproval, such addition or modification shall require the favorable vote of not less than two-thirds of the entire membership of the Village Council or Police Jury.
The Mayor and Town of Benton responded to the MPC’s petition in Suit No. 103,995 and Benton Travel Plaza intervened, alleging that the Board of [¡Aldermen's failure to override the recommendation of the MPC to deny the zoning change by a two-thirds vote was arbitrary and capricious.[2] The MPC was dismissed by the trial court for lack of standing because it filed suit in its official capacity rather than as the members of the MPC in their individual capacities. Benton Travel Plaza then filed a motion for judgment on the pleadings (its Petition for Intervention); and, on October 16, 2000, District Judge Bruce Bolin entered judgment in the matter, ordering a change in the zoning classification of the subject property from B 2 to B 3 (“Bolin Judgment”). No appeal was taken from the Bolin Judgment. Based on the Bolin Judgment, the Owners and Benton Travel Plaza adopted the exceptions of Defendants in the present action and also pled prescription with regard to Plaintiffs’ claim that Ordinance No. 342 is void.
After hearing evidence in the case sub judice, District Judge John Robinson entered judgment, on February 6, 2001, denying all of Defendants’, Owners’ and Benton Travel Plaza’s exceptions and declared both ordinances void. A Declaratory Judgment was rendered, making moot the prayer for mandamus relief. In oral reasons, Judge Robinson recognized that Act 558 gave the Town of Benton and the police jury the opportunity to create the MPC, which they did. Judge Robinson relied on Article 4, Section 3 of Act 558, which states that the “village council and the police jury” may make changes, including the “vacating of’ streets. Such action [^requires the MPC’s approval which can only be disregarded if there is a two-thirds vote of the Board of Aldermen. Judge Robinson found that this case involved the “vacating” of Third Street; and, since the issue had not been submitted to the MPC, Ordinance No. 342 was declared void. Likewise, Judge Robinson found Ordinance No. 345 to be void because it was not passed by a two-thirds vote of the Board of Aldermen, which is the required vote under Act 558 to override the recommendation of the MPC to deny the proposed zoning change.
As previously stated, the Owners and Benton Travel Plaza are Petitioners in Intervention in the present suit. They appeal, asserting the following three assignments of error: (1) the trial court erred when it declared Town of Benton Ordinance No. 342 of 2000 void; (2) the trial court erred when it declared Town of Benton Ordinance No. 345 of 2000 void; and (3) the trial court erred in denying Appel *86 lants’ peremptory exceptions of res judica-ta and no cause of action and/or no right of action.

DISCUSSION

As a threshold matter, we note that the former Mayor, Carl Janzen, re-urges in his brief to this court the issue of prescription. The former Mayor and the Town of Benton as Defendants and the Owners and Benton Travel Plaza as Petitioners in Intervention filed dilatory exceptions of prescription in the court below, both of which were denied. The Owners and Benton Travel Plaza as Appellants neither raised as an assignment of error nor briefed the denial of its exception of prescription. That ruling of the trial court is, therefore, considered abandoned by Appellants on appeal. Uniform Rules, Court of Appeal, Rule 2-12.4; State, In the Interest of R.C., R.C. and D.C. v. Clarke, 33,023 (La.App. 2d Cir.10/27/99), 743 So.2d 843; Knotts v. Snelling Temporaries, 27,-773 (La.App.2d Cir.12/6/95), 665 So.2d 657.
In addition, the former Mayor as Appel-lee did not file an answer to the appeal, but argues in brief that Plaintiffs claims were prescribed. Since the former Mayor, in effect, seeks a reversal from this court of the trial court’s denial of his exception of prescription, he was required to answer the appeal and assign the ruling of the trial court as error. La. C.C.P. art. 2133; Shoreline Gas Inc. v. Grace Resources, Inc., 34,517 (La.App.2d Cir.4/4/01), 786 So.2d 137. The issue of prescription, therefore, is not properly before this court and will not be considered.
We now begin our discussion of the validity of Ordinance No. 342, involving the abandonment of a portion of Third Street.

Validity of Ordinance No. 342 of2000

Recall that Ordinance No. 342 abandoned or revoked the public dedication of a portion of Third Street, which resulted in the Owners’ legal ownership of the property. Plaintiffs cite Article 4, Section 3 of Act 558 in arguing that the abandonment of a street must first be presented to the MPC before submission to the Board of Aldermen. For clarity, we reproduce again the pertinent text of Article 4, Section 3:
The Village Council and the Police Jury may make from time to time, other additions to or modifications of the official map by placing thereon the lines of planned new streets or street extensions, widenings, narrowings, or vacating ... and provided further that such proposed addition to or modification of the official map shall be submitted to the planning commission for its approval, and, in the event of such commission’s disapproval, such addition or modification shall |srequire the favorable vote of not less than two-thirds of the entire membership of the Village Council or Police Jury.
Plaintiffs emphasize the term “vacating” from this section, apparently equating that term with “abandonment,” The trial court agreed and, on that basis, found that Act 558 applied to the abandonment of Third Street which meant that the issue had to originate in the MPC. Since it did not, the trial court declared the ordinance void.
The Owners and Benton Travel Plaza challenge the applicability of Act 558 to the legal act of abandonment of a street. They argue that Act 558 does not address abandonment, but, rather, deals only with changes to and modifications of the official map of the Town of Benton.
All parties in this appeal rely on and/or challenge the applicability of the above-quoted section of Article 4, Section 3 of Act 558. We agree with the Owners and Benton Travel Plaza that Article 4, Section 3 does not address the abandon *87 ment of a street;[3] but a reading of another portion of Act 558, however, reveals a clear expression of intent to empower and require the MPC’s consideration of the proposed abandonment of property. Article 2, Section 9, Legal Status of Plan, states, in pertinent part:
Whenever the commission shall have adopted the master plan or any part thereof, then and thenceforth no street, park, or any public way ... shall be constructed or authorized in the area of jurisdiction of the commission until and unless the location and extent thereof shall have been submitted to and approved by the planning commission; provided that in the case of | disapproval, the commission shall communicate its reasons to the Village Council or Police Jury, as appropriate, and the Village Council or Police Jury, by a vote of not less than two-thirds of its entire membership, shall have the power to overrule such disapproval and, upon such overruling, the Village Council, Police Jury, or the appropriate board or officer shall have the power to proceed; .... The acceptance, widening, removal, extension, relocation, narrowing, vacating, abandonment, change of use, acquisition of land for, or sale or lease of any street or other public way, ground, place, property, or structure shall be subject to similar submission and approval, and the failure to approve may be similarly overruled. (Emphasis added).
The above provision expressly includes abandonment, indicating that even the acts of divesting ownership must first be submitted to the. MPC for consideration. Article 4, Section 3, on the other hand, addresses only those changes or modifications made to the official map, which is why that section does not include actions involving the transfer of ownership of property, such as abandonment and acquisition of the same. We find, therefore, that Act 558 does contain the requirement that the proposed abandonment of a street be first submitted to the MPC for consideration before an ordinance to that effect can be validly enacted by the Board of Aldermen. Thus, Ordinance No. 342, which was not submitted to the MPC for consideration prior to its enactment, is void.
|inNext, we find that La. R.S. 48:701[4] is not controlling in this case. That statute grants the authority to divest ownership of public property to the governing municipal authority and, therefore, is in conflict with Article 2, Section 9 of Act 558. In anticipation of such conflicts, the drafters of Act 558 included Article 1, *88 Section 3, which states that “[w]here other laws relating to the physical planning, zoning ... and other purposes of the Act are in conflict with the provision of the Act, the provisions of this Act shall prevail .... ” Act 558 is, therefore, controlling in this case.
As a final note on this ordinance, and as more fully discussed later in this opinion, the delegation of authority to the MPC to consider the proposed abandonment of streets does not constitute an abdication of the Board of Aldermen’s authority and power to enact ordinances to accomplish that end. The MPC merely considers the proposal and makes a recommendation; it is within the sole province of the Board of Aldermen whether or not an ordinance shall be enacted.

Validity of Ordinance No. 345 of2000

The first inquiry concerning Ordinance No. 345 is whether the Bolin Judgment has res judicata effect regarding the issue of the validity of the ordinance in the present suit. We find that it does not.
|nThis court recently discussed the current state of Louisiana law on the doctrine of res judicata in Hudson v. City of Bossier, 33,620 (La.App.2d Cir.8/25/00), 766 So.2d 738, writ denied, 00-2687 (La.11/27/00), 775 So.2d 450:
Louisiana’s doctrine of res judicata, now embodied in La. R.S. 13:4231, was substantially changed by La. Acts 1990, No. 521, § 5, effective January 1, 1991. In its present posture, our law now bars a second action between the parties which arises out of the occurrence which was the subject matter of the prior action. La. R.S. 13:4231; Terrebonne Fuel & Lube, Inc. v. Placid Refining Company, 95-0654, 95-0671 (La.01/16/96), 666 So.2d 624. As stated in the comments to La. R.S. 13:4231 as amended, “[t]he central inquiry is not whether the second action is based in the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action. This serves the purpose of judicial economy and fairness by requiring plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence.” See Avenue Plaza, L.L.C. v. Falgoust, 96-0173 (La.07/02/96), 676 So.2d 1077.
La. R.S. 13:4231 embraces the broad usage of the phrase “res judicata” to include both claim preclusion (res judica-ta) and issue preclusion (collateral estop-pel). Under claim preclusion, a final judgment on the merits precludes the parties from Mitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the same issue in a different cause of action between the same parties. Thus, res judicata used in the broad sense has two different aspects: 1) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit; and 2) foreclosure of relitigating matters that have been previously litigated and decided.
Applying this law to the present case, we conclude that the issue presented and decided in the present suit arose out of the same transaction or occurrence that precipitated Suit No. 103,995 and the Bolin Judgment. Both suits involve the changing of the zoning classification of the subject | ^property from B-2 to B-3 and the propriety of the Board of Aldermen’s enactment of an ordinance affecting that *89 change in zoning. Our inquiry, however, does not end there.
The enactment of La. R.S. 13:4231 did not abolish the res judicata requirement of “identity of parties.” In that regard, we look again to our discussion in Hudson v. City of Bossier, supra:
The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. Giving conclusive effect to a prior judgment against one who is neither a party nor in privity with the party therein contravenes due process. As a consequence, a judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings. Richards v. Jefferson County, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d [76]64(sic) (1996). Thus, without identity between the parties in the first and subsequent actions, an exception of res judicata will not be maintained. Tranchina v. State, 99-1332 (La.App. 4th Cir.06/09/99), 740 So.2d 713.
Identity of parties does not mean that the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity. Sun Finance Co., Inc. v. Jackson, 525 So.2d 532 (La.1988); Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978). See also Duffy v. Si-Sifh Corp., 98-1400 (La.App. 4th Cir.01/09/99), 726 So.2d 438, writ denied, 99-0372 (La.04/30/99), 741 So.2d 14; Arthur v. Zapata Haynie Corp., 95-956 (La.App. 3d Cir.01/22/97), 690 So.2d 86, writ denied, 97-1031 (La.05/30/97), 694 So.2d [252]242(sic), cert. denied, 522 U.S. 860, 118 S.Ct. 162, 139 L.Ed.2d 106 (1997); Morris v. Haas, 95-75 (La.App. 5th Cir.05/30/95), 659 So.2d 804, writs denied, 95-2519, 95-2545 (La.12/15/95), 664 So.2d 441.
As noted in Terrebonne Fuel & Lube, Inc., supra, Louisiana’s res judicata law was broadened by the 1990 amendment and is now in line with federal provisions. Under federal law, the preclusive effect of a judgment binds the parties to the action and nonparties who are deemed the “privies” of the parties in these limited circumstances: (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty’s interests were adequately represented by a party to the action who may be considered the “virtual representative” of the nonparty because the interests of the party and the nonparty are so _J_12closely aligned. Gilbert v. Visone, 30,-204 (La.App. 2d Cir.02/25/98), 708 So.2d 496; Condrey v. Howard, 28,442 (La.App. 2d Cir.08/21/96), 679 So.2d 563, writ denied, 96-2335 (La.11/22/96), 683 So.2d 281, citing Meza v. General Battery Corp., 908 F.2d 1262 (5th Cir.1990). The concepts of control and virtual representation are narrowly construed and are not satisfied merely by showing that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the respective actions. Gilbert, supra (citations omitted).
Judge Robinson, in the case sub judice, denied the exception of res judicata without reasons. We agree with Judge Robinson’s conclusion; and, while we do not have his reasons for so holding, our finding that the Bolin Judgment is not res judicata is based on our belief that the plaintiffs in the present case were not adequately represented in the previous suit. In fact, since the MPC was dismissed from Suit No. 103,995, there was no representation in that action for anyone other than Benton Travel Plaza, as Petitioner in Intervention, and the Mayor and the Town of *90 Benton, as Defendants, all of whom support the enactment of Ordinance No. 345.
The argument is made that the presence of Grace Jenkins in both suits results in an identity of parties. Ms. Jenkins, a member of the MPC, was present in her official capacity in Suit No. 103,995, and in her individual capacity in the present suit. Her presence in both suits is of no moment, however, because the MPC (which included Ms. Jenkins) was dismissed for lack of standing in Suit No. 103,995; and, therefore, the interest of the MPC in challenging Ordinance No. 345 was not advanced in that suit. Again, there are additional plaintiffs in the present suit challenging the validity of the ordinance. When citizens have distinct private rights, an adjudication in a proceeding where the citizens are not parties, individually or as members | uof a class, is not a bar to the private citizens’ action, and the adjudication is not res judicata as to them. Jefferson Parish v. Louisiana Department of Corrections, 259 La. 1063, 254 So.2d 582 (1971) (J. Barham, dissenting). We remain mindful, however, that this rule of law is tempered by the very important policy in favor of broadening the concept of “identity of parties” which was explained by the supreme court in Terrebonne Fuel & Lube, Inc. v. Placid Refining Company, 95-0654, 95-0671 (La.1/16/96), 666 So.2d 624:
It is implicit in the concept of a judicial system that controversies be finally resolved so that parties may enjoy their rights and so that conflicting legal obligations may not be imposed on an individual; litigation must end at some point.
In this regard, we note that the above policy would certainly be frustrated by allowing a zoning ordinance to be repeatedly challenged simply by the addition of a different citizen or landowner plaintiff to a suit challenging the zoning ordinance. This is not, however, the case with which we are presented. As previously stated, there were no plaintiffs in Suit No. 103,995 which could have represented or “virtually represented” the plaintiffs in the present suit. We conclude, therefore, that the judgment in Suit No. 103,995, the Bolin Judgment, is not res judicata and the trial court properly denied such exception.
Having concluded that the present matter was properly before the trial court, we now address the propriety of the trial court’s ruling declaring Ordinance No. 345 void. The trial court relied on Act 558 in holding that, in order to validly enact the ordinance, the Board of Aldermen was required to override the recommendation of the MPC to deny the zoning change by |! Rtwo-thirds vote of the entire membership of the board. We find that Act 558 contains such requirement.
Article 5 of Act 558, Zoning, contains the pertinent section to our discussion of this issue. Section 3 of Article 5 defines the “Method of Procedure” for enacting the zoning ordinance or any amendment thereof. Section 4 of Article 5 speaks specifically to the procedure for amending the zoning ordinance:
The zoning ordinance, including the map or maps, may from túne to time be amended; but no amendment shall become effective unless it be first submitted to the planning commission and approved by it, or if disapproved, receive the favorable vote of not less than two-thirds of the entire membership of the Village Council or the Police Jury, as the case may be. (Emphasis added).
The above language is clear. If the MPC recommends denial of a proposed zoning amendment, an ordinance to the contrary may only be validly and legally enacted by two-thirds vote of the Board of Aldermen. *91 A zoning ordinance is null and void where the proper procedures for its adoption are not followed. Kirk v. Town of Westlake, 421 So.2d 473 (La.App. 3d Cir.1982). Accordingly, we find that Ordinance No. 345 must fall because of the procedural defect in its enactment.
In arguing that the above section should not apply in this case, the former Mayor of Benton argues that the proposed zoning change was not before the Board of Aider-men as an “appeal” of the MPC’s recommendation of denial of the proposed zoning change; rather, according to Appellees, Ordinance No. 345 was initiated by the Board of Aldermen as an independent exercise of its authority to initiate such ordinances on its own, |1fiwithout first submitting the same to the MPC. The argument is premised on the municipal governing authority’s reservation of police powers and its authority to delegate, but not abdicate, such power by the creation of the MPC. While such is not a frivolous argument, we find telling the paragraph in Benton Travel Plaza’s Petition for Intervention in Suit No. 103,995, which describes the evolution of Ordinance No. 345 as follows:
4.
Petitioner appealed the BPMPC’s recommendation to the Town of Benton and urged the Board of Alderman (sic) to reject the BPMPC’s recommendation and adopt Ordinance No. 345 of 2000 which would change the zoning classification of the Subject Property form B-2 to B-3. (Emphasis added).
The petition goes on to allege that the Board of Aldermen’s failure to override the MPC’s recommendation by the required two-thirds vote was arbitrary and capricious. In addition, the Petition for Intervention in the case sub judice contains an allegation identical to paragraph 4 quoted above. We are not persuaded by the argument that this was not an appeal to the Board of Aldermen. The ordinance was, therefore, required to be passed by two-thirds vote of the Board; and, since it was not, the ordinance was not validly or legally enacted.
In light of this conclusion, we need not discuss in depth the power of the Board of Aldermen to initiate zoning ordinances as independent acts under its police power. In that regard, we simply note that Section 4 of Article 5 expressly provides that “no such amendment shall become effective unless it be first submitted to the planning commission” for | ^consideration. (Emphasis added). Accord La. R.S. 33:4726; Schmitt v. City of New Orleans, 461 So.2d 574 (La.App. 4th Cir.1984), writs denied, 464 So.2d 318, 319 (La.1985).
We believe it pertinent, however, to also note that there is no question that the Board of Aldermen can initiate ordinances — -involving either zoning, abandonment of streets or otherwise — -but the ordinance must be submitted to the MPC for consideration. In addition, we point out that the power of the Board of Aldermen to enact ordinances — -again, whether zoning, abandonment of streets or otherwise — is not abdicated by the requirement that issues such as those involved in this case be first submitted to the MPC for consideration prior to the Board’s taking action on the issue. The Board of Aider-men is the body that ultimately enacts the ordinance; the MPC does not have that power or authority. The function of the MPC is to consider the proposal and make a recommendation to the Board of Aldermen. This requirement of MPC participation is in keeping with the purpose of Act 558, which is to provide for the physical planning and development (metropolitan planning) of the Village of Benton and the unincorporated part of Bossier Parish lying within five miles of the village. See *92 Article 1, Act 558 of 1956. Again, however, only the Board of Aldermen, through action or inaction, may transform the recommendation of the MPC into law.

J^CONCLUSION

For the reasons stated herein, the judgment of the trial court finding Ordinance Nos. 342 and 345 of 2000 void is affirmed. Costs shall be borne by Appellants.
AFFIRMED.

. A change in zoning status of a given piece of property is affected by the Board of Aider-men’s passage or enactment of an ordinance reflecting such change. The ordinance setting forth the change in zoning classification is actually an amendment to the master zoning ordinance which specifies the zoning classification of all property in the jurisdictional area.

. While Benton Travel Plaza desired the zoning change contained in Ordinance No. 345, it suggests to this court that it intervened in Suit 103,995 because it was of the belief that Act 558 required two-thirds vote of the Board of Aldermen to override the MPC’s recommendation, which it did not do. Benton Travel Plaza, therefore, sought from the district court a ruling that the failure to override the MPC recommendation by two-thirds was arbitrary and capricious and that, for that reason, the zoning should be changed to B-3.

. We agree with the Owners and Benton Travel Plaza that “simply vacating a proposed street or alleyway on the official map is not the equivalent of legal abandonment, which divests ownership and control from the Town of Benton.’’ They correctly state that abandonment is a distinct legal term meaning the voluntary relinquishment of the property by its owner with the intention of terminating ownership, possession and control, and without vesting ownership in any other person. Walters v. Greer, 31,480 (La.App. 2d Cir.1/22/99), 726 So.2d 1094; Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3d Cir.1974), writ denied, 293 So.2d 177 (La.1974).

. La. R.S. 48:701 provides as follows:
The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall reverL to the then present owners of the land contiguous thereto.