Dear Mayor Roach:
We received your request for an opinion on behalf of the City of Lake Charles regarding whether or not a municipality from taking revenues collected pursuant to a state statute and entering into an agreement to redistribute those revenues to other local governing authorities. Calcasieu Parish, the City of Lake Charles and other municipalities within Calcasieu Parish are considering consolidating all gaming revenue and redistributing that revenue to all local governing entities located within Calcasieu Parish based upon a formula set by the agreement. Specifically, you identified those revenues received from riverboat gaming and Delta Down's slot machine operations.
It is clear that the legislature statutorily delegated to local governing authorities the right to assess and collect certain fees or taxes from specified gaming entities within its jurisdiction. The legislature clearly identified the local governing authority that may assess and collect the fee or tax. For the licensed eligible horse racing facility, the governing authority for Calcasieu Parish may levy a tax not to exceed four (4%) percent of weekly taxable net slot machine proceeds. La.R.S. 27:391(C). For the Calcasieu Parish riverboats, the local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may assess up to a $ 2.50 admission fee for each boarding passenger. La.R.S. 27:93(A)(1). The language of this statue provides that either the parish or municipality may levy the fee, but not both; it is the location of the berth site which governs which authority may assess the fee. HorseshoeEntertainment, et al. v. Bossier Parish Police Jury, 714 So.2d 920
(La.App. 2Cir. 1998). Finally, La.R.S. 27:93(A)(6) provides that the governing authority for Calcasieu Parish may levy an additional .50 per person admission fee on all riverboats within the Parish. However, the monies collected pursuant to this provision are statutorily dedicated to specific educational entities in Calcasieu Parish.
As the entities who are entitled to collect this tax or fee are statutorily designated, any redistribution, or sharing, this revenue with other governing entities would require a constitutionally permissible cooperative agreement. Article VI, § 20 of the Louisiana Constitution provides:
 Except as otherwise provided by law, a political subdivision may exercise and perform any authorized power and function, including financing, jointly or in cooperation with one of more political subdivisions, either within or without the state, or with the United States or its agencies.
Regarding the transfer of public funds, this section must be read in pari materia with Article VII, § 14 of the Louisiana Constitution which generally prohibits the loan, pledge or donation of public funds and property by the state and its political subdivisions. Atty. Gen. Op. Nos. 04-0052; 91-313. Although § 14(c) of Article VII authorizes a cooperative endeavor between political subdivisions, this office has consistently opined that for such a cooperative endeavor to be legally permissible it must be made pursuant to a valid legal obligation; it must be for a public purpose; and it must result in a public benefit that is proportionate to its cost. Atty. Gen. Op. Nos. 02-0045, 00-237. Article VII, § 14(c) is not an exception to the otherwise general prohibition against the donation of public funds. Thus, even if political subdivisions cooperated for a public purpose, they still may not give away their assets to other political subdivisions merely for that public purpose. City of Port Allen v. Louisiana Municipal Risk Management, Inc.etal., 439 So.2d 399 (La. 1983).
Based upon the information provided, it is our understanding that a part of the endeavor would be for economic development. Although La.R.S.33:9020 et seq. provides authority for cooperative economic development, the pursuit of that development must be in accordance with the aforementioned constitutional provisions. Atty. Gen. Op. No. 02-0045. La R.S. 33:9021(6) identifies the purpose of cooperative economic development as an aid to local governments in alleviating various forms of economic distress, such as unemployment or underemployment. We have no information regarding this agreement; however, if it satisfies the constitutional requirements as set forth herein, this part of the proposed endeavor may be permissible.
As for the balance of the agreement, your request does not identify any legal obligation or authority of the City of Lake Charles to the other entities. This office has previously interpreted the requisite legal obligation to mean that the expenditure of funds be sanctioned, authorized by law or in the discharge of legal duty. Att. Gen. Op. No. 04-0149. Additionally, your request states no specific purpose for the expenditures other than creating a common pool of funds which will then be redistributed to local authorities for their own purposes. Absent a valid legal obligation and a public purpose, the described agreement would be prohibited by Article VII, § 14 of the Louisiana Constitution.
In summation, the City of Lake Charles may enter into a cooperative endeavor with other local governing authorities in compliance with Article VII § 14(c) of the Louisiana Constitution only if it is made pursuant to a valid legal obligation, it is made for a public purpose and it results in a public benefit that is proportionate to the costs.
We trust this adequately addresses your request. If you should have any additional questions or comment please contact our office.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ____________________________ Leonce G. Gautreaux., Assistant Attorney General Deputy Director, Gaming Division
CCF, jr./LGG/wba