# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-1132


**ROBERT JACKSON, SR.**

**VERSUS**

**WAYNE MCCULLEN, MAYOR FOR THE
CITY OF NATCHITOCHES, LOUISIANA**


**\*\*\*\*\*\*\*\*\*\*\*\*\*\***
ON APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, DOCKET NUMBER 77807, DIV.B.
HONORABLE DEE HAWTHORNE, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**SYLVIA R. COOKS**
**JUDGE**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, Billy H. Ezell, and James T. Genovese, Judges.


**AFFIRMED.**


Ernest L. Johnson
John W. Williams, Jr.
Law Offices of Ernest Johnson
1755 Nicholson Drive
Baton Rouge, Louisiana 70802
(225) 334-7490
COUNSEL FOR PLAINTIFF/APPELLANT:
    Robert Jackson, Sr.

Ronald E. Corkern
Corkern & Crews
Post Office Box 1036
Natchitoches, Louisiana 71458-1036
(318) 352-2302
COUNSEL FOR DEFENDANT/APPELLEE:
    Mayor Wayne McCullen

**COOKS, Judge.**

## STATEMENT OF THE CASE

The Plaintiff, Robert Jackson, Sr., is a member of the Natchitoches City Council and the Defendant, Wayne McCullen, is the mayor of the City of Natchitoches. Mr. Jackson filed a Petition for Writ of Mandamus seeking to cancel and rescind an Option to Purchase contract signed by Mayor McCullen on behalf of the City of Natchitoches. Following a hearing, the trial court dismissed Mr. Jackson's petition finding no cause of action. We find the contract entered into by the Mayor was not expressly prohibited by statute or the constitution and the City Council was authorized to and did ratify the actions of the Mayor; therefore, we affirm the judgment of the trial court.

## PROCEDURAL POSTURE

The Plaintiff's pleading, captioned as a Petition for Writ of Mandamus, seeks to compel the Mayor to rescind the Option to Purchase contract. A writ of mandamus will not lie to compel performance of a non-mandatory, discretionary duty. La.Code Civ.P. arts. 3863 and 3864. *Ebey v. Avoyelles Parish School Board,* 03-765 (La.App. 3 Cir. 12/17/03), 861 So.2d 910, *writ denied*, 04-196 (La.3/26/04), 871 So.2d 349; *Citizens Organized for Sensible Taxation (C.O.S.T.) v. St. Landry Parish Sch. Bd., et al.*, 528 So.2d 1048 (La.App. 3 Cir. 1988). Mayor McCullen was exercising his discretionary judgment, as administrator of the City of Natchitoches, when he made the decision to enter into the Option to Purchase contract. A writ of mandamus is not the appropriate vehicle to challenge the validity of the contract in question or the actions of the Mayor. However, in this case, the trial court treated the Plaintiff's petition as one in ordinary process and held a hearing on the merits of Mr. Jackson's claim regarding the legality of the Option to Purchase contract under the provisions

2

of the Natchitoches Parish Home Rule Charter. We find no error in that decision. Additionally, the trial court found, and we agree, Mr. Jackson had standing to litigate the legality of the Option to Purchase Contract.

## STATEMENT OF THE FACTS

The relevant facts are as follows. The City of Natchitoches (City) and the State of Louisiana entered into a Corporate Endeavor Agreement for the construction of a facility to house the Louisiana Sports Hall of Fame and Museum. The cost of the facility, estimated at eight million dollars, was to be borne by the State; the City would be responsible for purchasing the property for the museum. City officials approached several property owners in the downtown area but no site was agreed upon. The City was anxious to purchase land for the museum and thereby finalize the commitment from the State to build the facility in the historic downtown area of Natchitoches. The Natchitoches City Counsel had already allocated funds in the 2004-2005 budget for property acquisition. Mayor McCullen testified because of delays in acquiring a suitable site, the City risked losing the project entirely. He testified: "It was so critical that I received a call from Representative Taylor Townsend and he said that [], on December 21st there was a group that was coming to Natchitoches made up of representatives from Facility Planning, Director of Museum System, the architects, and of course City officials met with them. And at that time we had to come up with a site for the museum because the project was jeopardized." Mayor McCullen testified he met with Facility Planning officials on December 21 and walked the downtown area exploring possible sites. Property on the corner of Lafayette and Washington Streets owned by Calvin and Peggy Braxton appeared to the group to be an ideal location for the museum because of its proximity to the tourist commission. On December 22, 2004, City officials met with the Braxton's attorney about purchasing the property. Mr. Braxton indicated, by phone,

3

he was not interested in selling the property. On December 23, 2004, the City's attorney, while waiting for his car to be serviced, was approached by Mr. Baxton regarding sale of the property. The Braxtons had apparently reconsidered the City's offer and negotiations began for the City to acquire the property for the sum of $310,000.00. It was determined the best way to protect the City's interest was to purchase an option for one year on the Braxton property for the consideration of $40,000.00, which Option to Purchase was conditioned on the following: (1) availability of State funds for the construction of the facility; (2) State acceptance of the property as a suitable location for the Louisiana Sports Hall of Fame; (3) access to the property would be available to City and State officials for surveying, environmental testing and any other work related to the construction of the facility; and (4) the property appraised for the amount of the purchase price of $310,000.00. In the event any one of the conditions was not met, then the Option would be voided, and the consideration would be returned to the City. The contract provided for the payment of $16,000.00 on January 11, 2005 and the remainder to be paid in monthly installments of $2,000.00 beginning on January 15, 2005 and continuing every month through December 15, 2005. Prior to signing, Mayor McCullen contacted Pat Jones, the City's Financial Director, to confirm that there were sufficient funds to pay the total amount of the Option. When he received confirmation, the Option to Purchase was signed by the Mayor on December 24, 2004 and immediately faxed to the State notifying it of the purchase of a site for the museum.

On January 10, 2005, prior to the disbursement of any funds, Mayor McCullen presented the Option Contract to the City Counsel. Mr. Jackson was absent from the meeting. Resolution No. 5 of 2005 was passed by a vote of 4-0 authorizing the Mayor to execute an Option to Purchase property located at the intersection of Lafayette and Washington Street for the construction of the Louisiana Sports Hall of

4

Fame and Museum. The resolution authorized payment of the $40,000.00 consideration for the Option. On February 15, 2005, Mr. Jackson filed the Petition for Writ of Mandamus. On March 12, 2005, the City Counsel passed Ordinance No. 16 of 2005 authorizing the Mayor to purchase an option on the Braxton property for the sum of $40,000.00.

A hearing was held on Mr. Jackson's petition. The trial court dismissed the petition on a no cause of action exception. Mr. Jackson appeals, asserting the following assignments of error:

(1) The Option to Purchase contract entered into on December 24, 2004 by Natchitoches City Mayor Wayne McCullen created an unauthorized debt obligation on behalf of the City of Natchitoches.

(2) The Ordinance passed by a majority of the Natchitoches City Council on March 12, 2005 ratifying the Mayor's action cannot be retroactively applied.

## LAW AND DISCUSSION

Mr. Jackson does not assert the Option to Purchase contract is illicit or immoral. *See* La.Civ.Code art. 2030. However, he does contend the Option to Purchase contract signed by Mayor McCullen is against public policy because it was executed in violation of Section 2.10 of the Home Rule Charter for the City of Natchitoches, which provides:

An act of the council having the force of law shall be by ordinance. An act requiring an ordinance shall include but not be limited to those which:

(9) Incur debt in any manner.

Under this provision, the passage of an ordinance is required in order for the City to incur debt. Jackson asserts the Option to Purchase contract incurs debt and was executed by the Mayor without an authorizing ordinance, and therefore, is against public policy. Moreover, he contends a contract which is against public policy can never be ratified.

5

In *Horseshoe Entertainment v. Bossier Parish Policy Jury,* 30,502 (La.App. 2 Cir. 6/26/98), 714 So.2d 920, *writ denied*, 98-1941 (La. 11/6/98), 728 So.2d 392, the issue was whether a state statute prohibited the Bossier Parish Police Jury from levying and collecting a $.50 per person boarding fee to a gambling casino. The appellate court found the statute authorized either the parish or municipality to levy and collect the boarding fee, but not both. Since the gambling casino was located within the City of Bossier, Bossier City was authorized to levy the fee and the police jury exceeded its authority under state law. The appellate court stated the general rule that municipality or police jury is a "subordinate political subdivision of the state and as such possesses only those powers delegated to it by the state and its constitution." *Id.* at 924. Further, "any political subdivision of the state has only such powers as are expressly delegated to it by the state through statutory enactments." *Id.* In *Horseshoe Entertainment*, the court found the parish police jury had exceeded the authority delegated to it under state law and could not, by resolution, circumvent the requirements of state law. Such is not the case in the present suit.

In this case, Mr. Jackson has cited no state statute or constitutional provision which prohibits a municipality from entering into a contract for the purchase of real property. In fact, the City budget provides funds for the purchase of capital assets. It is true, as a general rule, a mayor acting alone is without power to execute a contract binding on the city in the absence of an ordinance or resolution by the governing council authorizing him to do so. *Sunray Services, Inc. v. City of Minden*, 29,260 (La.App. 2 Cir. 2/28/97), 690 So.2d 970, *writ not considered*, (La. 6/20/97), 695 So.2d 1343. An unauthorized contract, the object of which is not illicit, immoral or prohibited by statute or constitutional provision can be ratified by subsequent action of the governing authority upon being appraised of the facts. *Louisiana Consumer's League, Inc. v. City of Baton Rouge,* 431 So.2d 35 (La.App. 1 Cir. 1983),

6

*writ denied*, 435 So.2d 431 (La.1983). The general theory of ratification of the unauthorized acts of an agent is that the principal, with full knowledge of the facts, consents to the unauthorized actions and adopts the contract as if it had been previously authorized. *Everett v. Foxwood Properties,* 584 So.2d 1233 (La.App. 2 Cir. 1991); *Sunray Services, Inc. v. City of Minden*, 29,260 (La.App. 2 Cir. 2/28/97), 690 So.2d 970. Ratification is provided for in La.Civ.Code art. 1843, which states, in relevant part:

> Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.
>
> An express act of ratification must evidence the intention to be bound by the ratified obligation.

In *Louisiana Consumer's League, Inc. v. City of Baton Rouge,* 431 So.2d 35 (La.App. 1 Cir. 1983), *writ denied*, 435 So.2d 431 (La.1983), the Mayor-President entered into a contract with Consumer Protection Center (CPC), a nonprofit corporation providing consumer services in the Baton Rouge area. The contract was entered into after passage of the 1981 budget which included funding for the CPC's operation. In April 1981, the Baton Rouge City Council passed a resolution transferring funds from the CPC to the city-parish general fund. The CPC sued the City-Parish government for breach of contract. The City-Parish government denied the validity of the contract asserting the Mayor-President erroneously signed the contract without requisite authorization from the Council. There were no City-Parish resolutions passed which specifically authorized the Mayor-President to execute the contract. The appellate court found the contract had been ratified by the Council, stating:

> The 1981 budget had been approved by the City-Parish Council when the operating contract was executed. The Council was aware that the CPC was receiving funding under the contract and that the City-Parish was receiving the services of the CPC. The contract was not repudiated and the April 22 resolution specifically authorized the CPC

to continue operating for two additional months. Even if there was no authorization by resolution for the execution of the operating contract, we believe it was clearly ratified by the City-Parish Council.

*Id.* at 37.

In the present case, the testimony established the capital assets fund in the 2004-2005 budget contained adequate funds to purchase property to be used as a site for the Louisiana Sports Hall of Fame and Museum. In fact, the search for a suitable site had been going on for some time and the City was concerned it might lose the project and the revenue it hoped would be generated from the public visiting the Museum. Mayor McCullen brought the Option to Purchase to the City Council on January 10, 2005, prior to any disbursement of funds. On that date the Council passed Resolution No. 5 of 2005 and later passed Ordinance No. 16 of 2005 ratifying the Option to Purchase contract and binding the City to the terms of the agreement. Although the Mayor, as administrator, may have exceeded his authority in entering into the contract, we find the City Council ratified the actions of the Mayor by Ordinance No. 16 of 2005, passed on March 12, 2005, thereby binding the City to the terms of the Option to Purchase contract. Accordingly, we affirm the dismissal of Mr. Jackson's petition.

The City has requested damages for frivolous appeal pursuant to La.Code Civ.P. art. 2164. We do not find this appeal was taken solely for the purpose of delay or the issues presented on appeal were frivolous. Therefore, we deny the City's request for damages.

### DECREE

Based on the foregoing review of the record, we affirm the decision of the trial court dismissing Mr. Jackson's petition. All costs of this appeal are assessed to Robert Jackson, Sr.

**AFFIRMED.**

8