999 So.2d 1212 (2009)
Gordon L. WALTERS, Sr., Plaintiff-Appellee,
v.
John KLAGHOLZ, Rico Stokes, Malcolm Woolsey and Interstate Dodge, Inc., Defendant-Appellants.
No. 43,944-CA.
Court of Appeal of Louisiana, Second Circuit.
January 14, 2009.
*1213 H. Cameron Murray, for Appellant.
Gordon L. Walters, Sr., In Proper Person.
Before STEWART, CARAWAY and MOORE, JJ.
MOORE, J.
This is an appeal from a West Monroe City Court judgment awarding the plaintiff only $.75 in damages, but denying the defendant's reconventional demand for sanctions against the plaintiff. We affirm.

Facts
The plaintiff, Gordon L. Walters, Sr., brought suit in propria persona against Interstate Dodge, Inc., ("Interstate") in the City Court of West Monroe, Louisiana, styled as a suit on open account, to recover $38.00 he paid for a tire tool he purchased for his new Dodge one-ton truck. Mr. Walters also named as defendants Malcolm Woolsey, the truck salesman, Rico Stokes, the sales manager, and John Klagholz, the owner of the dealership. Defendants filed a general denial. Subsequently, the plaintiff amended his suit by adding a demand for reimbursement of late fees and interest charged against his account as a result of two late note payments by Interstate on the vehicle.[1]
*1214 The defendants denied the allegations of the amended petition. Additionally, Interstate filed a reconventional demand alleging that the suit was false and frivolous and that Mr. Walters had not been harmed. Interstate alleged, however, that it had been harmed because it was compelled to retain an attorney to defend the plaintiff's claims and had to expend time and effort of its employees to research and investigate Mr. Walters' claims. Interstate sought an award pursuant to La. Code of Civil Procedure article 863, which authorizes damages for pleadings that are frivolous and not grounded in fact after reasonable inquiry. It also demanded $38.15 from the plaintiff, alleging that the plaintiff had persuaded an employee of Interstate to issue him a check for $38.15 without knowledge of Interstate's manager or defense counsel.
At trial, Mr. Walters testified regarding his purchase of the truck from Interstate and his disputes with the dealership over the fact that there were no floor mats for the vehicle,[2] the allegedly non-functional tire tool, the dealership's two late payments on his account which he believed cost him over $100.00 in interest, and the dealership's tardiness in cancelling the "gap" insurance on his prior vehicle which he wanted applied to the new truck. Regarding the tire tool, Mr. Walters said that the tool supplied with the vehicle would destroy the hubcaps if used for their removal. He complained about the problem to the dealership and testified that the manager instructed him to buy a new tool, the cost of which he would be reimbursed; however, when he returned with a receipt for $38.15, the management refused to reimburse him.
Rico Stokes, the sales manager, testified that he never promised to reimburse Mr. Walters for the tire tool. He said that the vehicle was equipped with a tire tool that would remove the hubcaps. He stated that after Mr. Walters purchased the tool, he offered to reimburse Mr. Walters for the tool "if that would make him happy," but Mr. Walters said that it would not make him happy. Mr. Stokes added that he did not authorize the check for $38.15 that a former employee issued to Mr. Walters for the tire tool after suit was filed.
Regarding the additional interest for the late payments, the defense elicited testimony from Mr. Louis Dejesus, a representative of Chrysler Financial Services. Mr. Dejesus testified that Mr. Walters was actually only charged $.76 in added interest for the two late payments and that he was not charged any late fees. He stated that if Mr. Walters had telephoned Chrysler Financial Services and specifically asked how much additional interest he was charged for the late payment, he would have been informed that the added interest came to only $.76.
Mr. John Klagholz testified that he had no direct contact with Mr. Walters, but was aware that Mr. Walters had been disrupting his business. He testified that he has never had any complaints about the tire tool provided in the truck and that he never authorized reimbursement for the tire tool Mr. Walters purchased. He testified that he has spent four to five hours dealing with this case; that his comptroller/manager, Fred Meyers, has spent one to two hours researching Mr. Walters' claim, and his sales managers, Phillip Jerry and Rico Stokes, have spent two to three hours dealing with this matter. He testified that he never responded to Mr. Walters' request to speak with him because *1215 he did not believe that Mr. Walters was entitled to the tire tool and floor mats.
At the close of trial, the judge awarded the plaintiff $.75 in damages, representing his finding of the amount of interest Mr. Walters was ultimately charged for the late payments; however, it did not grant Interstate's reconventional demand for sanctions that included attorney fees and compensation for time and effort spent by employees and witnesses in defending the claim. The court did, however, assess the plaintiff with all court costs.
Interstate subsequently filed this appeal, contending that the trial court erred by failing to sanction the plaintiff.

Discussion
Louisiana Code of Civil Procedure article 863 imposes an obligation on litigants and their attorneys to make an objectively reasonable inquiry into the facts and law; subjective good faith will not satisfy this duty of reasonable inquiry. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2 Cir.1990). Among the factors to be considered in determining whether reasonable factual inquiry has been made are: (1) the time available to the signer for investigation; (2) the feasibility of a prefiling investigation; (3) the complexity of the factual and legal issues; and (4) the extent to which development of the factual circumstances underlying the claim requires discovery. Diesel Driving Academy, Inc., supra.
A trial court's factual findings as a basis for awarding (or for that matter, not awarding) sanctions for failure to comply with a statute requiring an attorney or litigant who signs a pleading to make objectively reasonable inquiry into facts and law are reviewed under the manifestly-erroneous or clearly-wrong standard. McKoin v. Harper, 37,984, (La.App. 2 Cir. 12/10/03), 862 So.2d 410.[3] Once the trial court finds a violation of Art. 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the "abuse of discretion" standard. Sanchez v. Liberty Lloyds, 95-0956, (La.App. 1 Cir. 4/4/96); 672 So.2d 268, 271, writ denied, 96-1123 (La.6/7/96); 674 So.2d 972.
Interstate alleges that Mr. Walters violated two of the duties imposed by La. C.C.P. art. 863: first, it contends that Mr. Walters could not certify that the allegations in his petition were true because he was not promised reimbursement for the tire tool, and he failed to make an objective inquiry as to whether he was owed anything for the late payments. Second, he could not certify that his pleading was not filed for the improper purpose of harassing Interstate and its employees.
Mr. Walters testified that when he discovered that he could not remove the hubcap from the truck with the tool provided, he went to the dealership to see his salesman, Malcolm Woolsey. Together they went to the repair shop to see what the employees used there to remove the hubcaps. In the shop, the employees used a special tool made by Snap On Tools. Mr. Walters testified that he asked them to order him one; however, when the tool never came after several trips to the shop over a period of weeks, he complained to Mr. Stokes, who told him that he did not have time to fool with it and for Mr. Walters to find something himself and he *1216 would be reimbursed. Mr. Walters found a Snap On tool salesman and purchased a tool for $38.15. When he presented the receipt to Mr. Stokes, the latter refused to pay the bill, stating that it was too much.
Mr. Stokes testified that he did not tell Mr. Walters that he would reimburse him for the tool; he admitted that he asked Mr. Walters if he would be satisfied if he reimbursed him for the cost of the tool and Mr. Walters told him he would not be satisfied. Mr. Woolsey did not appear at trial to corroborate or refute Mr. Walters' testimony.
The trial court questioned Mr. Walters regarding his statement that reimbursing him for the cost of the tire tool would not make him happy. Mr. Walters said that at the time, he was still very upset over the floor mats, the gap insurance and the late payments. He said payment for the tire tool would not have satisfied him because he wanted Interstate to talk to him about the other issues.
Mr. Walters' claim for reimbursement is contractual in nature. The court denied Mr. Walters' $38.15 claim for reimbursement for the tire tool, and also ruled that Mr. Walters had not proven that the tire tool supplied with the vehicle was deficient. We must assume that the court concluded that there was no actual agreement or meeting of the minds to sustain the breach of contract claim for reimbursement. That Mr. Walters thought he had an agreement with Mr. Stokes regarding reimbursement, but in fact did not, does not mean that he was not in good faith. Given the conflicting testimony regarding the agreement or lack of an agreement in this regard, we cannot conclude that the court manifestly erred by not finding that Mr. Walters' allegation regarding reimbursement for the tire tool was factually inaccurate. Accordingly, we find no manifest error in the trial court's determination that Mr. Walters' certification of this allegation met the objective standard required under Art. 863.
Next, Interstate contends that Mr. Walters failed to make an objective inquiry as to whether he was owed late charges and interest for the late payments. Mr. Walters relied on a document that, although not placed into evidence, was attached to his amended petition. The document, entitled "Chrysler Financial Account History as of 08/1/07" is obviously a record of Mr. Walters' loan account for the vehicle in question. Since Mr. Walters testified that he was able to check his account online to see if the payments were made timely, we may surmise that it was probably generated by Chrysler Financial Services.
The document shows the record of payments for the vehicle, including the two late payments made by Interstate. The first payment of $364.00 was due on 03-08-07, but was not made until 03-19-07. It shows that $108.92 went to the principal and $255.18 went to the "Finance Charge." The next payment of $364.00 was made on 04-13-07 (five days late) and indicates that $246.49 went to the principal while $117.51 went to interest. From this document, Mr. Walters concluded that he had been charged late fees and additional interest in the amounts of $167.18 and $19.51, based on his calculation under the simple interest loan that his interest charge should have been approximately $98.00 per month. He apparently assumed that there must also have been a late payment charge.
Mr. Dejesus, the representative of Chrysler Financial Services, testified that although there had been other late fees on Mr. Walters' account, there had been no late fees based on the two late payments in question. Mr. Dejesus stated that if Mr. Walters had called and asked specifically how much additional interest had accrued because of the late payment, he would *1217 have been told $.76, but if he had asked how much interest was applied to the loan from that late payment, his office would have told him "what he shows on the record," i.e. $255.18. However, Mr. Dejesus said that had the first payment been made on time, the interest charge would have been $208.00 and the principal $155.00. Instead, the record shows that the finance charge was $255.18 and the amount applied to the principal was only $108.82. Thus, it appeared to the trial court that Mr. Walters was charged either an additional $47.00 interest, or the credit to principal balance on the payment made by Interstate was $47.00 less than it would have been if paid on the due date. We concur in the trial court's analysis.
Dejesus testified that since the payment was not made on time, Mr. Walters was charged, in addition to interest on the remaining amount due on the loan had the payment been timely made, interest on an additional $155.00 of principal that was 11 days late, which he stated comes to $.39 based on the 8.44% interest rate. He testified that the second late payment triggered $.31 additional interest, plus $.06 interest for the term from the beginning of the loan, making the total amount of additional interest come to $.76. However, this $.76 does not account for the $47.00 difference between the actual finance charge of $255.18, instead of a $208.00 finance charge for the first payment, or stated differently, $47.00 less of the $364.00 paid was applied to the principal than would have been if the first payment had been made on time, which Mr. Dejesus confirmed.
The trial court ultimately accepted Mr. Dejesus's testimony that Mr. Walters was not charged any late fees and paid only an additional $.76 in interest. We cannot determine with certainty from the testimony of Mr. Dejesus whether the late payments resulted in Mr. Walters' principal balance being reduced less than it should have been, had the payments been timely made.
Interstate contends that Mr. Walters did not make an objectively reasonable inquiry into whether he was actually harmed. It argues that he had enough time to investigate his claim and determine the amount of added interest he paid by simply calling Chrysler Financial Services.
After review, we cannot say that the trial court was clearly wrong or manifestly erred in finding that Mr. Walters met the standard of an objectively reasonable investigation in this case. His contention that he had been harmed financially by Interstate's late payments was based largely on the print-out of his account and payment history. We do not think that it was unreasonable for Mr. Walters to conclude that such a document was accurate and appears, at least, to indicate that Mr. Walters was charged more interest and credited less principal on the two payments had the payments been timely made.
Finally, Interstate contends that the trial court erred by not concluding that Mr. Walters filed his suit for the improper purpose of harassing Interstate and its employees. Their argument is premised first upon a finding that Mr. Walters did not make an objectively reasonable inquiry into the fact he alleged. As noted above, we find no error in the trial court's conclusion that Mr. Walters met the standard required by Art. 863. Next, Interstate argues that because Mr. Walters called the defendants "cheats" and stated on occasion that there was nothing Interstate could do to make him happy, he clearly filed suit to harass Interstate. Finally, it contends that Mr. Walters himself admitted that he would not have filed suit for $1.00 except for his misplaced outrage over the perceived "cheats" that he suffered.
Our review of the record indicates that Mr. Walters genuinely believed he was *1218 aggrieved by the various incidents that occurred after the purchase of the truck. However, his persistent contacts with the dealership over perceived or actual wrongs eventually became a source of annoyance to Interstate's management and employees, to the point that they refused to deal with him. Mr. Klagholz refused to take his calls and respond to his letters. Ultimately, Mr. Walters filed suit in city court to recover for the cost of the tire tool and the additional interest he was charged. Although the court apparently found there was no meeting of the minds regarding the tire tool and the additional interest charged was only $.76, the trial court concluded that the suit was not frivolous nor intended to harass the defendants. It did, however, cast Mr. Walters for court costs.
We conclude that the trial court was not clearly wrong, nor did it abuse its discretion, in denying Interstate's claim for sanctions. Accordingly, we affirm the judgment of the trial court at appellant's cost.
AFFIRMED.
NOTES
[1] Interstate agreed to make the first two payments of $364.00 on the truck as part of the purchase agreement.
[2] The floor mats were not included in the $47,000 purchase price. Eventually, the dealership gave Mr. Walters the floor mats.
[3] There has been some inconsistency in this circuit and others over whether the appellate standard of review is the "manifest error" or "abuse of discretion" standard. We agree with the First Circuit that the "abuse of discretion" standard "is nothing more or less than the "manifestly erroneous" or "clearly wrong" criteria used by the appellate courts in reviewing a trial court's factual findings." Connelly v. Lee, 96-1213 (La.App. 1 Cir. 5/9/97), 699 So.2d 411, writ denied, 1997-2825 (La. 1/30/98), 709 So.2d 710.