STEWART, J.
11These consolidated matters involve the continuation of litigation between Alpine Meadows, L.C. (“Alpine Meadows”) and Peter Mark Winkler and Sarah Cush Winkler (“the Winklers”) stemming from the 2001 sale of a golf course in Caddo Parish. Alpine Meadows and the Winklers both appeal a trial court judgment rendered on October 4, 2013, in the consolidated cases of “Alpine Meadows, L.C. v. Peter Mark Winkler, et al.,” Docket No. 521,779 (“Alpine I”), and “Peter Mark Winkler, et al. v. Alpine Meadows, Garry Black, & James T. Adams,” Docket No. 586,482 (“Alpine II”). Alpine Meadows appeals the granting of a motion for sanctions filed by the Winklers in Alpine I, as well as the dismissal of its reconventional demand with prejudice and the dismissal of the Winklers’ malicious prosecution suit without prejudice in Alpine II. The Wink-lers filed a cross-appeal contending that Alpine Meadows’ reconventional demand in Alpine II is barred by res judicata.
Alpine Meadows also appeals judgments rendered on December 3, 2013, in “Alpine Meadows, L.P. v. Peter Mark Winkler, et al.,” Docket No. 571,922 (“Alpine III”), which sustained exceptions of res judicata filed by the Winklers, Meadowview Minerals (“Meadowview”), as well as Chesapeake Louisiana, L.P., and Chesapeake Operating, Inc. (generally referred to together as “Chesapeake”).
For the reasons explained in this opinion, we reverse the trial court’s denial of the Winklers’ exception of res judicata filed in response to Alpine Meadows’ re-conventional demand in Alpine II, and we affirm in all other respects.
| ¡¿FACTS and PROCEDURAL HISTORY

Alpine I

This ongoing dispute began when Alpine Meadows filed suit on June 8, 2008, against the Winklers and Chesapeake Louisiana to rescind the sale of the golf course for nonpayment of the sales price and thereby cancel a mineral lease granted by the Winklers on April 22, 2008. Because Alpine Meadows based its suit on the original sales price rather than on the reduced principal as subsequently agreed upon by the parties in a 2007 Allonge to the original mortgage note, the trial court agreed with the Winklers’ argument that Alpine Meadows would be unable to prove that they failed to pay any part of the purchase price and granted a summary judgment in their favor.[1]
In conjunction with their motion for summary judgment, the Winklers had also filed on July 14, 2008, a motion for sanctions under La. C.C.P. art. 863 against Alpine Meadows and its then counsel, James T. Adams (“Adams”). The Wink-lers alleged that Alpine Meadows and Adams filed the dissolution suit for an improper purpose and that they misrepre *753 sented facts to the court by intentionally concealing the Allonge. They asked the trial court to impose the “death penalty” to permanently enjoin Alpine Meadows from seeking any relief against them or any other party, such as Chesapeake, under any claim or cause of action arising out of the sale of the golf course. They also requested attorney fees and expenses. At the hearing |3on their motion for summary judgment, the Winklers postponed the motion for sanctions, stating that they would take it up at a later date.
Alpine Meadows appealed the summary judgment, but this court affirmed the trial court’s judgment in Alpine Meadows, L.C. v. Winkler, 44,557 (La.App.2d Cir.8/19/09), 17 So.3d 1028, writ denied, 2009-2274 (La.12/18/09), 23 So.3d 943. Noting that the price is an essential element in a suit to dissolve a sale under La. C.C. art. 2561, this court found that Alpine Meadows, by failing to state in its petition the actual price as modified by the Allonge and by failing to amend its petition to state the true facts, would be unable to satisfy its evidentiary burden at trial. We found it to be “disconcerting that Alpine Meadows failed to mention the extremely pertinent fact that the original note had been amended in 2007 by the Allonge[.]” Id., p. 5, at 1031. This court also found no genuine issue of material fact surrounding the execution of the Allonge, even though it was signed by Mrs. Winkler four months after it was signed by Mr. Winkler. We concluded that her signature was immaterial because his alone sufficed to bind their community.

Alpine II

On December 1, 2009, the Winklers filed a petition against Alpine Meadows, its managing partner, Garry Black (“Black”), and Adams, seeking damages for malicious prosecution of Alpine I and a declaratory judgment that the foreclosure threatened by Black in a letter dated October 29, 2009, as well as any action to enforce the Allonge or arising out of the sale, is barred by res judicata. In the October 29, 2009, letter sent shortly after this h court’s opinion in Alpine I, Black sought payment of $163,340.52 allegedly past due under the Allonge. Referring to a clause in the credit sale prohibiting leasing of the golf course property, Black advised the Wink-lers that he would waive that provision if they paid him $50,000 from the lease bonus they received and transferred 50% of their royalty interest to him.
Asserting that this court’s opinion in Alpine I reserved its right to bring foreclosure proceedings, Alpine Meadows filed a reconventional demand against the Wink-lers for the full amount due under the Allonge, plus interest, late fees, and attorney fees. Alpine Meadows alleged that the Winklers had failed to pay any installment when due, had paid nothing on the principal, had not paid ad valorem taxes when due for the years 2001 through 2008, had failed to pay the monthly deposit for taxes ’ and insurance premiums, and had either not kept the property insured or provided proof of insurance. Alpine Meadows complained that the mineral lease granted by the Winklers to Chesapeake violated provisions of the credit sale. It also complained that the Winklers had assigned one-third of their mineral interest to Meadowview but had not paid any part of the price they received for the assignment toward the purchase price of the golf course.
In response to Alpine Meadows’ recon-ventional demand, the Winklers filed an exception of res judicata on October 25, 2010. By order granted on June 28, 2011, the pending motion for sanctions from Alpine I was consolidated with Alpine II. Alpine Meadows then filed a motion for summary judgment on its reconventional *754 demand, and the Winklers filed a motion for summary judgment on the issue of res judicata. By judgments |firendered January 17, 2012, the trial court denied both motions for summary judgment and overruled the Winklers’ exception of res judi-cata. In doing so, the trial court opined that a full trial on the merits was warranted. Both parties applied for supervisory review of the trial court’s rulings, but both writs were denied.
A hearing took place on March 26, 2013. The parties reurged their respective motions for summary judgment, and the Winklers also reurged their exception of res judicata. The Winklers’ motion for sanctions in Alpine I was taken up as to Alpine Meadows, with the Winklers reserving their rights as to Adams for another time. The trial court heard testimony on the sanctions motion from Adams and Black, as well as from attorneys for the Winklers, Joseph Naus (“Naus”) and James Robert Madison (“Madison”).
. The trial court rendered written reasons for judgment on May 29, 2013. Although the trial court again denied both motions for summary judgment and overruled the Winklers’ exception of res judicata, it found the Winklers’ motion for sanctions to be meritorious and made a number of specific findings in support of severe sanctions against Alpine Meadows. Noting that Adams signed and notarized the Alpine I petition and that Black, as Alpine Meadows’ operating manager, signed the affidavit verifying the allegations of the petition, the trial court concluded that:
Adams and Black had first-hand knowledge of the Allonge when they filed the petition in district court and intentionally concealed it. Incredibly, both Adams and Black took and seem to have maintained the position that the Allonge was not signed and therefore had no legal efficacy at the time of the filing of the petition. The documentary evidence and the payments received without hesitation |fior complaint by Alpine both evidence the agreed-upon debt amendment and restructuring. The Court totally rejects the in court testimony of Messrs. Adams and Black.
The' trial court found that the Alpine I petition was filed because of the mineral lease granted by the Winklers and that Alpine Meadows intentionally concealed the Allonge “in a scheme motivated by greed” to force the Winklers either to assign part of the lease to it or surrender the property. The trial court noted that the petition was filed after Black had requested an interest in the lease and that Adams’ actions were “peculiar” when confronted by Madison and Naus about the Allonge. The trial court was incensed by the fact that Alpine Meadows had “enlisted the judiciary in its scheme to obtain an unwarranted and unconscionable result, all inconsistent with the law and evidence and our honorable system of justice.” In line with these findings, the trial court concluded that there was a “substantial and intentional” violation of La. C.C.P. art. 863. It determined the appropriate sanction to be an order limiting any recovery under the Allonge to prospective relief and forfeiting Alpine Meadows’ right to recover any of the allegedly past due principal, interest, late fees, attorney fees or other sums under the Allonge. The trial court also cast Alpine Meadows -with attorney fees.
The Winklers filed a motion to fix attorney fees in the amount of $247,950 and expenses in the amount of $7,309.55. They also asked the trial court to clarify its ruling on sanctions. They asserted -that Alpine Meadows, by accelerating the full amount due under the Allonge in its 17reconventional demand, would have no right to any prospective payments. They *755 believed this was not what the trial court intended.
In a ruling on July 27, 2013, the trial court clarified its earlier ruling on Alpine Meadows’ prospective rights. The trial court reduced the principal by a third and ordered it to be paid in monthly installments beginning after the finality of the sanctions judgment. The trial court asked the parties to stipulate as to the interest on the reduced principal. The trial court also ordered Alpine Meadows to pay the Winklers $175,000 in attorney fees plus $7,309.10 in costs and expenses, a total of $182,309.10.
When the parties were unable to agree upon an interest rate, the trial court supplemented its ruling on the issue by directing them to survey local banks to determine the average prime interest rate for commercial loans in the area. When it was determined that there was no such rate, the trial court again supplemented its ruling on sanctions to set the prospective interest rate at a fixed rate of five percent per annum.
The trial court rendered a final judgment in line with these rulings on October 4, 2013. The judgment denied the competing motions for summary judgment and the Winklers’s exception of res judicata. It dismissed Alpine Meadows’ reconven-tional demand with prejudice and the Winklers’ malicious prosecution suit without prejudice, reserving their right to file a motion for sanctions against Black and Adams. As sanctions against Alpine Meadows, the judgment replaced its right to recover under the original note as amended by the Allonge to a reduced principal amount of $542,897.85, plus five percent annual interest accruing on the date the judgment is final |sand executory. It ordered payments in 360 monthly installments of $2,914.39, beginning the first day of the month after the month the judgment becomes final and executory. Lastly, the judgment cast Alpine Meadows with attorney fees and expenses as ordered along with all costs of the proceedings.
Alpine Meadows and Black, with the assistance of new counsel, filed a motion for a new trial and a special plea of unconstitutionality. They asserted that the trial court’s interpretation and application of La. C.C.P. art. 863 violated La. Const. Art. I, §§ 2 and 23. The trial court denied both the motion for a new trial and the special plea on December 3, 2013. Thereafter, Alpine Meadows filed a suspensive appeal from the sanctions judgment, and a devolutive appeal as to the rest of the October 4, 2013, judgment. The Winklers filed a devolutive appeal seeking review of the trial court’s denial of their exception of res judicata and motion for summary judgment.

Alpine III

While seeking a new trial and other relief from the judgment rendered in Alpine II, Alpine Meadows instituted Alpine III by filing a petition for a declaratory judgment and supplemental relief on October 7, 2013, against the Winklers, Chesapeake, and Meadowview. Alpine Meadows alleged that the mineral lease granted in favor of Chesapeake on April 22, 2008, the assignment by Winklers to Meadowview on July 29, 2008, a pipeline easement granted by the Winklers to Chesapeake on January 5, 2010, and the completion of a producing well on a unit that includes the property in |9dispute all violated various provisions of the credit sale. Alpine Meadows sought a judgment declaring the mineral lease, the assignment, and the easement invalid and of no effect. It also sought an accounting of all proceeds of the production from the well. In response, all the defendants filed exceptions of res judi-cata. In judgments rendered on December 3, 2013, the trial court sustained the *756 exceptions and dismissed Alpine Meadows’ claims with prejudice. Alpine Meadows appealed.
On an unopposed motion by Alpine Meadows and Black, this court ordered the appeals consolidated. On July 17, 2014, Alpine Meadows and Black filed an exception of prescription, arguing that the motion for sanctions filed by the Winklers in Alpine I was untimely or had been abandoned. The exception has been referred to the merits of this appeal.
DISCUSSION

Res Judicata

As stated, the Winklers appeal the denial of their exception of res judicata filed in response to Alpine Meadows’ reconven-tional demand in Alpine II. Alpine Meadows appeals the judgments sustaining the defendants’ exceptions of res judicata in Alpine III. The exceptions in both matters turn on the preclusive effect of the judgment in Alpine I.
The law on res judicata is set forth in La. R.S. 13:4231 as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1)If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
|10(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Under the res judicata statute, a second action is precluded when the following are satisfied: (1) the judgment is valid; (2)the judgment is final; (3) the parties are the same; (4) the cause or cause of action asserted in the second suit existed at the time of the final judgment in the first suit; and (5) the cause or causes of action in the second suit arose out of the same transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 2002-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053. Whether the cause of action asserted in the second suit arises out of the same transaction or occurrence which was the subject matter of the first suit is the chief inquiry. Id., at p. 7, 843 So.2d at 1053; Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654 (La.1/16/96), 666 So.2d 624; Hudson v. City of Bossier, 33,620 (La.App.2d Cir.8/25/00), 766 So.2d 738, wnit denied, 2000-2687 (La.11/27/00), 775 So.2d 450.
Res judicata promotes the dual purposes of judicial efficiency and the final resolution of disputes by preventing needless relitigation. Terrebonne Fuel, supra; Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 2001-0993 (La.App. 1st Cir.8/4/04), 880 So.2d 129, unit denied, 2004-2426 (La.1/28/05), 893 So.2d 72. Res judicata forecloses both the |T1relitigation of matters that have not been litigated but should have been raised in the earlier suit (claim preclusion) and matters previously litigated and decided (issue preclusion). Hudson, supra.
The res judicata effect of a prior judgment is a question of law that is re *757 viewed de novo on appeal. Siemens Water Technologies Corp. v. Revo Water Systems, LLC, 2013-681 (La.App. 3d Cir.1/8/14), 130 So.3d 473; Bovie v. St. John the Baptist Parish, Dept. of Streets and Roads, 2013-162 (La.App. 5th Cir.9/4/13), 125 So.3d 1158; Pierrotti v. Johnson, 2011-1317 (La.App. 1st Cir.3/19/12), 91 So.3d 1056.
Appealing the Alpine II judgment denying their exception, the Winklers argue that Alpine Meadows’ foreclosure action to collect the unpaid purchase price under the Allonge is barred by the final judgment rendered in Alpine I. Alpine Meadows argues that this court expressly reserved its right to pursue relief under the Allonge and that its reconventional demand in Alpine II is based upon different transactions or occurrences than its demand in Alpine I. Alpine Meadows argues the same with regard to its appeal from the Alpine III judgments sustaining the defendants’ exceptions of res judicata.
Before we determine whether the requirements necessary for the application of res judicata are satisfied, we must address that part of this court’s prior opinion, Alpine Meadows, supra, which Alpine Meadows claims reserved its rights to proceed under the Allonge. After affirming the trial court’s summary judgment in favor of the Winklers and dismissal of Alpine Meadows’ claim with prejudice, this court addressed whether Alpine | ^Meadows would then be prevented from bringing suit on the obligation evidenced by the Allonge. In addressing that matter, which was not essential to our review of the summary judgment, this court rendered an advisory opinion that must be considered as purely obiter dicta and not binding on either the lower court or this court. Meaux v. Wendy’s Intern., Inc., 2010-2613 (La.5/13/11), 69 So.3d 412; Mandalay, supra,. Moreover, we disagree with Alpine Meadows’ contention that this court expressly reserved its rights to proceed under the Allonge. This court merely opined that Alpine Meadows could file suit against the Winklers if they breached their obligations “at some other time.” Alpine Meadows, p. 7, 17 So.3d at 1032. The opinion that Alpine Meadows may file a suit for some future breach does not equate to a reservation of rights to bring claims that could and should have been asserted in Alpine I.
We now address whether Alpine Meadows’ reconventional demand in Alpine II and claims in Alpine III are precluded by Alpine I. The summary judgment, which was granted in Alpine I in favor of the Winklers and which dismissed Alpine Meadows’ action with prejudice, is a valid and final judgment. Therefore, the first two requirements of res judicata are satisfied.
 The third requirement is that the parties must be the same in both suits. Absent an identity of the parties in the first and subsequent actions, the exception of res judicata will not be maintained. Ward v. State, Dept. of Transp. & Dev. (Office of Highways), 43,948 (La.App.2d Cir.1/28/09), 2 So.3d 1231, writ denied, 2009-0431 (La.4/17/09), 6 So.3d 791; Hudson, | nsupra. Identity of parties does not mean that the parties must be the same physical or material parties; rather, it means that the parties must appear in the suit in the same quality or capacity. Burguieres, supra; Ward, supra; Hudson, supra. Identity of parties is satisfied when a privy of one of the parties is involved. Burguieres, supra; Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978). As it pertains to the doctrine of res judicata, a privy is defined as “one who, after the commencement of an action, has acquired an interest in the subject matter affected by the judgment through or under one of *758 the parties, as by inheritance, succession, purchase or assignment.” Five N Company, L.L.C. v. Stewart, 2002-0181, p. 16 (La.App. 1st Cir.7/2/08), 850 So.2d 51, 61 citing Black’s Law Dictionary (6th Ed. 1990). In Hudson, supra, this court explained:
Under federal law, the preclusive effect of a judgment binds the parties to the action and nonparties who are deemed the “privies” of the parties in these limited circumstances: (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (8) the nonparty’s interests were adequately represented by a party to the action who may be considered the “virtual representative” of the nonparty because the interests of the party and nonparty are so closely aligned.
Id., p. 7, 766 So.2d at 743 (citations omitted).
The Winklers correctly point out that Alpine II involved the same parties in the same capacities as Alpine I. Likewise, Alpine III involved the same parties, and privies of the Winklers, in the same capacities as in Alpine I. The Chesapeake defendants and Meadowview acquired from the Winklers interests in the golf course property that is the subject matter of the litigation. Because their interests in the mineral lease, the assignment, and the pipeline servitude depend upon the Winklers’ ownership of the |14property, their interests are so closely aligned that the Winklers can be viewed as their “virtual representatives” for purposes of the preclusive effect of Alpine I as to the claims asserted in Alpine III. We find that the third requirement of res judicata is satisfied in both Alpine II and Alpine III.
The fourth requirement is that the cause of action asserted in the subsequent suit existed at the time of the final judgment in the first suit. The cause of action asserted in Alpine II for foreclosure under the Al-longe undoubtedly existed at the time of the final judgment in Alpine I. As for Alpine III, the Winklers granted the mineral lease on April 22, 2008, and they assigned part of their interest to Meadow-view on July 29, 2008. As such, any cause of action alleging that the lease or assignment violated provisions in the credit sale existed at the time of the final judgment in Alpine I. The subsequent granting of the pipeline servitude and the drilling of a producing well on a unit in which the golf course property is included flow directly from the mineral .lease. As such, these alleged violations of the credit sale are merely derivative of the initial alleged violation that resulted when the Winklers granted the mineral lease.[2] We find that the fourth requirement is satisfied as to the exceptions of res judicata asserted in Alpine II and Alpine III.
| ^Finally, the chief inquiry and fifth requirement is that the cause or causes of action asserted in the subsequent suit must arise out of the same transaction or occurrence which was the subject matter of the first suit. Failure to raise a claim that arises from the transaction or occurrence of the first suit amounts to a waiver of that claim. Medicus v. Scott, 32,326 (La.App.2d Cir.9/22/99), 744 So.2d 192. The transaction or occurrence that is the subject matter ,of the first suit is the *759 credit sale of the golf course by Alpine Meadows to the Winklers. The original mortgage note and the Allonge are part and parcel of the transaction by which Alpine Meadows sold the golf course to the Winklers. The Allonge merely modified the obligation under the original note. We find no merit to Alpine Meadows’ argument that the transaction or occurrence that was the subject matter of Alpine I differs from those involved in Alpine II or Alpine III. The claims asserted by Alpine Meadows in the three suits are separate causes of action arising from the same transaction or occurrence, namely, the credit sale. Alpine Meadows’ actions asserted in Alpine I under the original note to rescind the sale and thereby cancel the mineral lease because of nonpayment of the purchase price, in Alpine II to foreclose because of the, failure to pay the purchase price under the Allonge, and in Alpine III for a declaratory judgment based on alleged breaches of the credit sale are exactly the type of piecemeal litigation that the doctrine of res judicata is intended to prevent. The causes of action asserted in Alpine II and Alpine II could and should have been raised in Alpine I.
|1fiFor these reasons, we find that the requirements for the application of res ju-dicata as to Alpine Meadows’ reconven-tional demand in Alpine II and its action for a declaratory judgment in Alpine III are satisfied. Because we find merit to the exceptions of res judicata based on the final judgment in Alpine I, we need not address those arguments concerning whether the dismissal of Alpine Meadows’ reconventional demand in Alpine II provides a separate ground for the exceptions asserted in Alpine III.
To avoid the dismissal of its claims, Alpine Meadows argues that exceptional circumstances justify relief from the rule of res judicata. As provided by La. R.S. 13:4232(A)(1), a judgment does not bar another action by the plaintiff when exceptional circumstances justify relief from the res judicata effect of the judgment. This provision allows a court to exercise its discretion to balance the principle of res judicata with the interests of justice. Hudson, supra. Generally, “exceptional circumstances” are found in complex procedural situations, such as where a litigant did not have the opportunity to present his claim due to some quirk in the system. Mandalay, supra, citing Chaisson v. Oceanside Seafood, 97-2756 (La. App. 1st Cir.6/29/98), 713 So.2d 1286, Exceptional circumstances may also be found in factual scenarios not anticipated by the parties or decisions beyond the parties’ control. Id.
We find no exceptional circumstances warranting relief from res judicata as to Alpine Meadows’ reconventional demand in Alpine II or declaratory judgment action in Alpine III. To the extent that exceptional circumstances exist in these matters, they are of Alpine Meadows’ own |17making by initially filing suit without mentioning that the obligation sued upon had been modified by the Allonge. The tactics employed by Alpine Meadows in its transparent and repeated attempts to wrest the golf course property from the Winklers upon learning that they had granted a lucrative mineral lease to Chesapeake have resulted in the complexities of these consolidated matters. What is not complex is that Alpine Meadows could and should have asserted its causes of action arising from the Winklers’ alleged breaches of the Allonge and credit sale in Alpine I and that these various claims are now barred by res judicata.
In light of the above discussion, we reverse the trial court’s denial of the Wink-lers’ exception of res judicata filed in Alpine II and hereby sustain that exception, *760 dismissing Alpine Meadows’ reconventional demand with prejudice. Because of this ruling, we need not address Alpine Meadows’ argument that the trial court erred in dismissing its reconventional demand with prejudice as part of its ruling on sanctions. We affirm the trial court’s judgments in Alpine III.

Sanctions

We now turn to Alpine Meadows’ appeal from the judgment granting the Winklers’ Alpine I motion for sanctions. In short, Alpine Meadows argues that the trial court’s finding of sanctionable conduct was manifestly erroneous and that its award of attorney fees and its reduction of the amount recoverable under the Allonge constitute an abuse of discretion. Alpine Meadows has also filed an exception of prescription seeking to have the motion for sanctions dismissed by this court as untimely or abandoned.
[ 1sLa. C.C.P. art. 863 provides:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law. ■
(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.
C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
|iaF. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier. .
*761 G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.
This article is to be utilized for exceptional circumstances. Woods v. Woods, 43,182 (La.App.2d Cir.6/11/08), 987 So.2d 339, writ denied, 2008-2256 (La.11/21/08), 996 So.2d 1110; Brown v. Sanders, 2006-1171 (La.App. 1st Cir.3/23/07), 960 So.2d 931. The slightest justification for the exercise of a legal right precludes sanctions. Woods, supra. The trial court’s factual findings for imposing sanctions is reviewed under the manifest error standard. Walters v. Klagholz, 43,944 (La.App.2d Cir.1/14/09), 999 So.2d 1212; Jones v. Bethard, 39,575 (La.App.2d Cir.4/13/05), 900 So.2d 1081, unit denied, 2005-1519 (La.12/16/05), 917 So.2d 1115. Once the trial court determines that sanctions are appropriate, it has considerable discretion as to the type and severity of the sanctions imposed. Cloud v. Barnes, 47,764 (La.App.2d Cir.4/17/13), 116 So.3d 67, unit denied, 2013-1304 (La.9/27/13), 122 So.3d 1006, recon. not cons., 2013-1304 (La.11/1/13), 124 So.3d 1105; Daigle v. City of Shreveport, 46,429 (La.App.2d Cir.10/5/11), 78 So.3d 753, writ denied, 2011-2472 (La.2/3/12), 79 So.3d 1027. Therefore, we review the type and amount of the sanction under the abuse of discretion standard. Cloud, supra; Jones, supra.
12flThe following four factors for consideration when arriving at an appropriate sanction have evolved: (1) the conduct being punished or sought to be deterred by the sanction; (2) the expenses or costs caused by the violation of the rule; (3) whether costs or expenses are reasonable, as opposed to self-imposed, mitigable, or the result of delay in seeking court intervention; and (4) whether the sanction is the least severe sanction adequate to achieve the purpose of the rule under which it was imposed. Cloud, supra; Dai-gle, supra.
We begin with Alpine Meadows’ contention that the trial court was manifestly erroneous in finding sanctionable conduct. As justification for its filing of the Alpine I petition without pleading the Allonge, Alpine Meadows argues both that it was not aware when Alpine I was filed that Mrs. Winkler had signed the Allonge and that it was reasonable in believing, based on the advice of its attorney, Adams, that the Allonge was not valid because it had not been timely accepted by Mrs. Winkler.
At the March 26, 2013, hearing, the trial court heard testimony concerning whether sanctions should be imposed on Alpine Meadows.[3] The record evidence and testimony established that Black and Mr. Winkler signed the Allonge on March 2, 2007. Adams notarized their signatures. Mrs. Winkler left the meeting that day without signing, but she returned to | ⅞1 Adams’ office and signed on July 5, 2007. Adams testified that he did not learn that she had signed until he met with the Wink- *762 lers’ attorneys and found the signed Al-longe in a box of Alpine Meadows files at his home. He claimed that he had wiped the Allonge out of his mind and had not discussed it with Black before filing the Alpine I petition. Adams explained that he did not amend the Alpine I petition because he believed that Mrs. Winkler’s failure to sign in March 2007 constituted a rejection of the offer. He also asserted that because the Winklers had been paying $4,000 per month, rather than $4,010.32 required under the Allonge, they were simply continuing under the “old deal.” However, he admitted that the Winklers were never informed that the $4,000 payment was short and that there was no demand letter until after he read in a legal newsletter that they had entered a lease with Chesapeake and informed Black of that development. He asked Black whether the Winklers were up to date on then-payments and advised that Alpine Meadows could either file a foreclosure proceeding or sue to rescind the sale. Adams could not testify as to how much the Wink-lers were allegedly in arrears.
Regarding his meeting with Madison and Naus, Adams testified that he told them he did not recall a new agreement between Alpine Meadows and the Wink-lers. He telephoned Black so they could question him about whether anything had been signed. Adams then found in his office unsigned copies of the amended credit sale and Allonge. Adams testified that he went to his home with Madison and finally found the signed documents there.
|2i)Black recalled that he and Mr. Wink-ler signed the Allonge on March 2, 2007, but that Mrs. Winkler had to leave before signing to get her children from school. Black testified that Adams told him there was no new agreement without Mrs. Wink-ler’s signature. Black admitted that he did not object to the $4,000 monthly payments. He also admitted that Adams contacted him after seeing a notice about the Winklers’ mineral lease. Soon after, Black demanded a share of the Winklers’ royalty interest and lease bonus before finally filing Alpine I.
Naus testified that the Winklers told him and Madison that they had signed an Allonge. Because the Winklers were consistent and precise about what had occurred, Naus and Madison decide to confront Adams at his office rather than send another discovery request. The Winklers’ former counsel had requested documents from Adams and received none. When they met Adams at his office, he first denied any existence of the Allonge. After calling Black, Adams produced unsigned copies of the amended credit sale and Al-longe. In looking through these documents, Naus noticed a reference indicating the Allonge had been signed on March 2, 2007. He testified that after questioning Adams about the note, Adams then produced a file that had sticky notes indicating that the Allonge was attached to the original note and that Black would pick up the Allonge. Because all of this was consistent with what the Winklers had told them, they kept questioning Adams, who finally said that the documents might be in a safe at his home.
According to Naus, Adams had not been forthcoming with them. When they began questioning him, Adams did not even admit that Black fyand Mr. Winkler had signed the Allonge. Naus testified that once they obtained the signed documents, they determined the amount necessary to cure any default and mailed Black a check for $20,000. Black returned the payment with instructions to send no further payments until the litigation ended.
Madison testified that he spoke with Black when Adams made the call from his office. He testified that Black denied any *763 modification of the agreement with the Winklers and did not mention anything about an issue with Mrs. Winkler’s signature. Madison also testified about what occurred at Adams’ home. Adams first looked in his safe. After not finding anything, Adams looked for several minutes through piles of papers. Adams finally checked the den, where he walked directly to a stack of papers and pulled out the original note along with the signed Al-tange. x
After having been closely involved in this matter for some time and after having listened to the testimony at the sanctions hearing, the trial court concluded that Adams and Black “had first-hand knowledge of the Allonge when they filed [Alpine I] and intentionally concealed it.” The trial court determined that both the documentary evidence and the fact that Alpine Meadows received the Winklers’ payments without complaint established that the parties had agreed to the restructuring of the debt under the Allonge. The trial court noted that the Winklers had difficulty convincing their lawyers that they had signed documents restructuring their debt and that the existence of the signed Allonge was discovered only through the “persistent and laborious efforts” of Naus and Madison.
| «With regard to the specific violations of Article 863, the trial court determined that the Alpine I petition was filed for an improper purpose in a “scheme motivated by greed” to force the Winklers either to assign a part of their mineral interest to Alpine Meadows or give up the property; that the claims and legal assertions in the petition were not well grounded in fact or warranted by existing law due to the omission of the Allonge; and that the petition involved the “judiciary in a scheme to obtain an unwarranted and unconscionable result[.]”
The trial court made specific findings of fact based largely on its credibility determinations. Such findings demand great deference because only the fact finder is aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in the testimony. Foley v. Entergy Louisiana, Inc., 2006-0983 (La.11/29/06), 946 So.2d 144; Rosell v. ESCO, 549 So.2d 840 (La.1989). In the absence of contradictory documentary or objective evidence, or internal inconsistency or implausibility in a witness’s story, factual findings based on credibility determinations can virtually never be manifestly erroneous or clearly wrong. Foley, supra,: Rosell, supra. Applying these standards to the trial court’s factual findings, we cannot say the trial court was manifestly erroneous.
Though Adams and Black both claimed that the Allonge was ineffective because not timely signed by Mrs. Winkler, neither mentioned this to Madison and Naus during their search for the Allonge. Moreover, nothing in the Allonge required acceptance by a certain date. Neither Adams nor Black testified that they informed the Winklers that the offer | afiwould expire by a particular date if not signed by Mrs. Winkler or that the offer was rejected when she left the March 2, 2007, meeting without signing.[4] The record shows that Mrs. Winkler did sign the Allonge, that it was in Adams’ possession, and that it was uncovered only after Madison and Naus confronted Adams and forced the issue. Moreover, the record shows that Alpine Meadows was satisfied with the *764 Winklers’ payments until learning of the mineral lease. Alpine Meadows then filed suit without any mention of the fact that the Winklers’ obligation had been modified by the Allonge. We find that the facts and circumstances support the trial court’s factual findings regarding violations of Article 868.
We find no merit to Alpine Meadows’ argument that sanctions should have been imposed upon Adams only because any sanctionable conduct was his alone. Under Article 863(D), the court may impose sanctions on the person who made the certification, the represented party, or both. Black, as Alpine Meadows’ operating manager, signed the affidavit attached to the Alpine I petition verifying that the allegations of fact therein were true and correct. The trial court specifically found that his affidavit was “materially false in a number of respects.” The affidavit did not mention that the obligation had been restructured by the Allonge. As discussed, the trial court discredited Black’s testimony and obviously found him, and through him Alpine Meadows, to be a part of the scheme being perpetrated against the Winklers through the filing of Alpine I. Thus,' the sanctionable conduct |2fiwas not attributable to Adams alone, and sanctions were appropriate as to Alpine Meadows.
We turn now to Alpine Meadows’ arguments challenging the type and amount of sanctions imposed. First, Alpine Meadows argues that the trial court’s judgment erroneously impairs the obligation of contracts in violation of La. Const. Art. I, § 23 by rewriting the contract between the parties to reduce the remaining principal amount by a third and to reduce the interest rate.[5] In arguing that the trial court may not rewrite a contract between the parties, Alpine Meadows cites Clovelly Oil Co., LLC v. Midstates Petroleum Co. LLC, 2012-2055 (La.3/19/13), 112 So.3d 187 and Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841 (La.1949). Both cases state that courts have no authority to alter or make new contracts for the parties. However, these cases deal with the trial court’s interpretation of contracts, not the imposition of sanctions which is at issue here. Thus, they are not directly applicable to the issue of sanctions.
Alpine Meadows further argues that unlike Rule 11 of the Federal Rules of Civil Procedure, Article 863 does not authorize nonmonetary sanctions.[6] Rule 11 provides that a sanction may include “non-monetary directives,” a penalty paid to the court, or payment of reasonable attorney fees and expenses that directly result from the violation. Fed. Rule Civ. Proc. 11(c)(4). Article 863(D) authorizes “an appropriate sanction which |27may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.” While Article 863 does not specifically provide for nonmonetary penalties, it does not exclude them as an “appropriate sanction.” As stated, the type and severity of the sanction imposed falls within the considerable discretion of the trial court. Daigle, supra.
In fashioning an appropriate sanction, the trial court rejected the Winklers’ re *765 quest for the “death penalty,” a dismissal which would have arguably left Alpine Meadows, which had accelerated the debt, with no right to prospective relief under the Allonge and amended credit sale.[7] After concluding that Alpine Meadows’ actions in violation of Article 863 were intentional, deceptive, malicious, egregious, a fraud on the court, and a “veritable attack on our system of justice,” the trial court determined an appropriate sanction to be a limitation on any prospective recovery to which Alpine Meadows might be entitled. As detailed in the facts section of this opinion, the trial court ultimately reduced the principal amount of the debt by a third and ordered that amount payable at five percent annual interest. In effect, the trial court imposed a significant monetary sanction which it believed to be warranted by Alpine Meadows’ intentional failure to disclose the more favorable terms of the Allonge when it filed Alpine I. Considering the severity of Alpine Meadows’ actions as thoroughly set forth by the trial | ?scourt along with the significant discretion afforded the trial court in fashioning an appropriate sanction, we find no abuse of discretion by the trial court and no impermissible impairment of the parties’ contractual obligations.
Alpine Meadows next argues that it was denied access to the court on its reconven-tional demand due to the trial court’s dismissal of that demand. Because we have determined that the reconventional demand in Alpine II must be dismissed on the Winklers’ well-founded exception of res judicata, this argument is now moot.
Alpine Meadows also argues that it was denied due process because it is being punished for Adams’ actions and because the trial court did not hold a hearing before reducing the interest rate and extending the term of payment under the Allonge as part of its sanction. As to the first argument, we have already addressed the fact that Alpine Meadows was appropriately sanctioned for its own conduct through the actions of Black. As to the latter argument, Article 863 requires a hearing at which a party may present evidence or argument before a sanction may be imposed. La. C.C.P. art. 863(E). Notice and an opportunity to be heard is the only due process required before the imposition of sanctions under Rule 11. Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018 (5th Cir.1994). There is no requirement under Article 863 or Rule 11 for a hearing as to the type or severity of the sanction imposed. Moreover, the record shows that Alpine Meadows was not denied any due process. It presented testimony at the sanctions hearing and vigorously opposed the imposition of sanctions. Its_[2f,vigorous opposition continued with new counsel even after the trial court issued its May 29, 2013, reasons for judgment addressing the sanctions. Counsel was involved in arguments regarding the particulars of the sanctions at proceedings on July 8, 2013, July 15, 2013, and October 4, 2013. Alpine Meadows also filed a motion for new trial and special plea of unconstitutionality which were argued on December 2, 2013. We find no support in this record for Alpine Meadows’ argument that it was denied due process.
*766 Alpine Meadows also argues that, in any event, the sanctions imposed were grossly excessive and an abuse of discretion. We have already addressed the sanction reducing the amount recoverable prospectively by Alpine Meadows and will not revisit that issue here. Alpine Meadows argues that there is no -basis for the amount of attorney fees and expenses awarded by the trial court. Asserting that any defect was corrected on June 17, 2008, when Adams “delivered” a copy of the Allonge and amended credit sale to the Winklers’ attorneys, Alpine Meadows would limit attorney fees to legal work done prior to that date in the amount of $6,480.
Applying the factors for consideration in arriving at an appropriate sanction, we find that the trial court intended to impose a harsh and significant sanction in light of conduct it found to be unusually egregious. As required by Article 863(G), the trial court described the conduct it found to constitute a violation and explained its basis for imposing the harsh sanction. We found no manifest error in the trial court’s factual basis for imposing sanctions.
| ünThe second and third factors require consideration of whether the ex- • penses or costs were caused by a violation of the rule and whether they are reasonable rather than self-imposed, mitigable, or the result of delay in seeking court intervention. For purposes of Article 863, reasonable is not construed as equivalent to actual expenses. A determination of reasonableness must include consideration of the goals of deterrence, punishment, and compensation. Mendonca v. Tidewater, Inc., 2011-0318 (La.App. 4th Cir.9/7/11), 73 So.3d 407, writ denied, 2011-2333 (La.12/2/11), 76 So.3d 1179; Derouin v. Champion Ins. Co., 580 So.2d 1043 (La. App. 3d Cir.1991), writ denied, 585 So.2d 574 (La.1991). The trial court’s knowledge of the facts of a case is another important factor to consider in reviewing the reasonableness of an award. Mendonca, supra. This is because the trial court is best able to “review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis.” Id., p. 10, 73 So.3d at 415, citing Thomas v. Capital Security Services, Inc., 836 F.2d 866, 873 (5th Cir.1988).
A hearing on the amount of attorney fees took place on June 26, 2013. The Winklers actually sought $252,950 in attorney fees plus $7,309.10 in expenses. After considering the exhibits and testimony adduced at the hearing, the trial court determined reasonable attorney fees to be $175,000, plus expenses. The trial court clearly found that Alpine Meadows was in bad faith when it filed Alpine I based on the original note. |s1As found by the trial court; the signed Allonge was uncovered only through the persistent and laborious efforts of the Winklers’ attorneys.
Even after the Allonge came to light, Alpine Meadows persisted in its litigation of Alpine I as though it did not exist and had no effect. When the Winklers attempted to cure the deficiency under the Allonge by paying $20,000, Alpine Meadows, through Black, refused the payment. Alpine Meadows then threatened foreclo-súre under the Allonge, which prompted the Winklers to file Alpine II. We agree with the Winklers that Alpine II would not have been filed but for the sanctionable conduct in Alpine I.
Alpine Meadows’ bad faith actions, as thoroughly detailed by the trial court, resulted in the Winklers incurring significant attorney fees all in connection with Alpine Meadows’ bad faith efforts to wrest the golf course property from the Winklers so that it could benefit from the valuable mineral rights. Though harsh and signifi *767 cant, the sanction can be viewed as the least severe to address the litigation abuse perpetrated by Alpine Meadows and to achieve the purposes of deterrence, punishment, and compensation. In light of the considerable discretion afforded the trial court in determining an appropriate sanction, we find that the attorney fees and expenses awarded by the trial court were caused by Alpine Meadows’ violation of Article 863 and that the total sanction imposed was reasonable under the facts of this case.[8]
[.^Finally, we find no merit to Alpine Meadows’ exception of prescription and motion to dismiss filed with this court. Article 863 does not provide a time limitation for the filing of a motion for sanctions by a party. In fact, the trial court on its own motion may impose sanctions under the article. La. C.C.P. art. 863(D). Article 863 is not viewed as providing a private cause of action, but as a remedial tool for the court. Frazer v. Bruscato, 34,021 (La. App.2d Cir.11/1/00), 772 So.2d 293, citing Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, fn. 6.
In, Frazer, supra, this court affirmed a trial court judgment dismissing a motion for sanctions as untimely. The motion for sanctions had been filed more than six years after the filing of the offending petition. In line with federal jurisprudence interpreting Rule 11, this court concluded that motions for Article 863 sanctions should be filed within a reasonable time frame so as to afford the offending attorney (or party) the opportunity to defend himself and the court an opportunity to rectify the offending conduct.
Here, the Winklers filed their motion for sanctions on July 14, 2008, a little over a month after the filing of the petition in Alpine I by Alpine Meadows on June 8, 2008. At the hearing on the Alpine I motion for summary judgment, the Wink-lers indicated they would take up the motion for sanctions at a later date. There was no objection by Alpine Meadows to the postponement, and no objection raised when the motion was reurged and heard on March 26, 2013, in conjunction with arguments in Alpine II. |aaAlpine Meadows offered the testimony of Black and Adams in its defense at the hearing and vigorously opposed the factual the basis for the imposition of sanctions.
Litigation involving these parties has been ongoing since the filing of Alpine I and involves claims that should have been asserted in that matter. Alpine II commenced even before the supreme court denied writs as to the Alpine I judgment and was prompted by Black’s October 29, 2009, demand letter threatening foreclosure and demanding a share of the Wink-lers’ lease bonus and royalty interest. Considering the continual litigation between the parties and that the matter was apparently before different trial judges before it was finally heard, we do not find that the Winklers abandoned their motion for sanctions. We agree with the Wink-lers’ argument that concepts of abandonment and prescription apply to actions, not *768 a motion for sanctions under La. C.C.P. art. 863, which can be imposed by the trial court in the absence of any motion by a party.
As exhaustively discussed, the trial court’s reasons for imposing sanctions show that it found the sanctionable conduct to be particularly egregious. We do recognize that this matter involved an unusual delay between the offending conduct and the imposition of sanctions. However, the seriousness of the sanctionable conduct found by the trial court demanded that the matter be addressed. For these reasons, we deny the exception and motion for dismissal filed by Alpine Meadows on appeal.
Finally, Alpine Meadows argues that the trial court erred in dismissing the Winklers’ Alpine II suit for malicious prosecution without ^prejudice. Alpine Meadows argues that the dismissal without prejudice and the granting of the motion for sanctions allows the Winklers to split their cause of action for malicious prosecution. We review the trial court’s decision to dismiss a case with or without prejudice pursuant to an abuse of discretion and manifest error standard. Richardson v. O’Neal, 30,599 (La.App.2d Cir.5/13/98), 716 So.2d 26, citing Archer v. Tudor Const. Co., 94-850 (La.App. 3d Cir.2/15/95), 649 So.2d 1251. We find no merit to the argument that the dismissal improperly allows the Winklers to split their cause of action against Alpine Meadows. The motion for sanctions is not a private cause of action, but rather a tool used by the trial court to remedy litigation abuse. The trial court determined to dismiss the malicious prosecution action without prejudice in light of its decision to impose sanctions. We detect no manifest error or abuse of discretion by the trial court in this regard.
CONCLUSION
For the reasons explained, we reverse that part of the trial court’s judgment denying the Winklers’ exception of res ju-dicata filed in response to Alpine Meadows’ reconventional demand in Alpine II. In all other respects, the judgment is affirmed. Costs of these consolidated appeals are assessed against Alpine Meadows and Garry Black.
REVERSED IN PART; AFFIRMED IN PART.
APPLICATION FOR REHEARING
Before STEWART, DREW, MOORE, LOLLEY and PITMAN, JJ.
| ¶ Rehearing denied.

. In 2007, the parties signed both the Allonge and an "Amendment and Act of Correction to the Credit Sale.” These documents will be referred to together as the "Allonge.”

. Alpine Meadows’ claims that the pipeline and drilling of the well threaten to damage or "waste” the golf course property ring hollow in light of Black’s demands that the Winklers pay him a share of their lease bonus and assign a portion of their royalty interest to him. It seems clear that Alpine Meadows, since learning of the mineral lease, has been acting to wrest the property from the Wink-lers in order to reap the benefit of the mineral rights made valuable by the Haynesville Shale discovery.

. The Winklers’ motion for sanctions was not directed at Black, individually. The motion for sanctions filed on July 14, 2008, was directed against Alpine Meadows and Adams. At the March 26, 2013, hearing, the Winklers indicated that they would reserve their motion for sanctions against Adams for another time. However, considering that a full hearing was conducted on the motion for sane-tions and that both Adams and Black testified, the reservation of sanctions against Adams appears as an improper attempt to piecemeal the issue. We note that under Article 863(D), the court on its own motion could have imposed sanctions against Adams and /or Black but did not. Thus, the issue of sanctions stemming from Alpine I appears to have been fully addressed.

. In Alpine Meadows, supra, we determined that Mrs. Winkler’s “signature on the Allonge was immaterial, because [Mr. Winkler] alone could bind the community." Id., p. 5, 17 So.3d at 1031.

. La. Const. Art. I, § 23 states, "No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be enacted.”

. Because Article 863 is derived from Rule 11, our courts have looked to federal jurisprudence applying Rule 11 for guidance when interpreting and applying Article 863. Connelly v. Lee, 96-1213 (La.App. 1st Cir.5/9/97), 699 So.2d 411, writ denied, 97-2825 (La. 1/30/98), 709 So.2d 710.

. Federal courts have imposed the harshest of sanctions, dismissal of a lawsuit, for Rule 11 violations where the party exhibited dishonesty or fraudulent conduct. In Jimenez v. Madison Area Technical College, 321 F.3d 652 (7th Cir.2003), the court dismissed Jimenez's discrimination claims which were based on falsified evidence. A dismissal with prejudice and $30,000 in attorney fees and expenses was imposed in Peerless Indus. Paint Coatings Co. v. Canam Steel Corp., 979 F.2d 685 (8th Cir. 1992), where the plaintiff’s claim was based on a falsified letter and factual misstatements.

. In Keaty v. Raspanti, 2003-1080 (La.App. 4th Cir.2/4/04), 866 So.2d 1045, writs denied, 2004-0941 (La.6/18/04), 876 So.2d 806 and 2004-0947 (La.6/18/04), 876 So.2d 807, the appellate court increased the sanctions awarded for an Article 863 violation from $34,605.08 to $107,605.95 for pursuing an unfounded action. The sanction was intended to punish conduct the court found to be "deliberate, knowingly without any foundation and crafted for the sole purpose of harassment.” The same could be said in this matter, where Alpine Meadows deliberately filed Alpine I without any foundation inasmuch as it was based on a note that had been restructured and where it was crafted solely to harass the Winklers into giving up the property.